STATE, Plaintiff-Appellee, v. LANGMAN, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22236.   Decided June 18, 1951.

Lee C. Howley, Director of law, Jos. Stearns, Chief Police Pros., Cleveland, for plaintiff-appellee.

Bravo & Bernstein, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, PJ:

This appeal comes to this court on questions of law from a judgment finding the defendant guilty of keeping a room for gambling in violation of §13054 GC.

The facts are not in dispute. The defendant, with one avowed intention of testing the authority of the City of Cleveland to prohibit the operation of "Bingo" when conducted for alleged charitable purposes, made public announcement of his intention to operate such a game at 7921 Superior Avenue. His announcement stated that Bingo would be played at 1:30 P. M. March 29, 1951, the clear import of such announcement being to invite the public to participate. Twenty-five persons responded to the defendant's invitation and engaged in the playing of "Bingo" until the game was stopped by the police.

The game of "Bingo" as played on the day in question, was as follows: The defendant, who at all times was in charge of the game, caused "Bingo" cards or slips to be sold to the persons desiring to take part. They were sold at the rate of three for ten cents. The players were seated at a long table and were furnished with a number of small black discs. Each Bingo card or slip had the letters "B-I-N-G-O" printed in large letters across the top. Below each letter were five squares formed by lines drawn vertically down and between each letter and before the letter "B" and after the letter "O," which lines were intersected by five horizontal lines at equal distances of about three-quarters of an inch thereunder. In each of these squares numbers were printed ranging from one to seventy-five, except the center square under the letter "N" in the third line down was printed "Free Space." When play was begun, the player would put a disc on the "Free Space." The defendant had a wire cage so constructed that it could be turned on a central axis in which cage were supposed to be seventy-five small balls, fifteen of which had printed thereon the letter "B" and a single number ranging from one to fifteen; fifteen balls with the letter "I" and a

single number ranging from sixteen to thirty; fifteen balls with the letter "N" and numbers ranging from thirty-one to forty-five; fifteen balls with the letter "G" and numbers ranging from forty-six to sixty, and fifteen balls with the letter "O" and a single number ranging from sixty-one to seventy-five. After causing the balls to be mixed up by turning the cage around, the defendant would draw them out of the cage one by one and call out the letter and number found on each, and if the player found that number under the letter called, on his Bingo card or cards, he would put a disc thereon. The first player to get the proper sequence of discs as determined by the defendant before play began would call out "Bingo" and would be declared the winner and would receive the announced prize of $1.50.

The police officers observed the defendant operate the first game which the defendant announced would be a "fill-up" game, meaning that all the spaces on the Bingo card would have to be covered by a disc. The defendant called out letters and numbers until two women called out "Bingo." They were declared the winners and each received from the defendant a dollar and a half. A third player thereafter also claimed to have won, and she likewise was paid $1.50.

A second game was then announced by the defendant and after it had started the police officers put an end to the play, confiscated all of the "Bingo" equipment and arrested the defendant and his assistant. The undisputed evidence in the record is that the assistant a Miss Johnston, had been hired by defendant to sell bingo cards and to help conduct the game.

Although the defendant did not take the stand in his own defense, he did call his assistant "Miss Johnston" who insofar as the playing of "Bingo" as above described, on the afternoon of March 29, in a large room at the rear of 7921 Superior Avenue in the City of Cleveland is concerned, corroborated in detail the defendant's conduct of a bingo game in the place and manner as charged by the State and supported by the State's evidence. The defendant then attempted to show by this witness that the defendant conducted the game for the welfare fund of Owatanna Lodge. The court, upon objection timely made, rejected this evidence and the defendant made proffer thereof. The court did not commit prejudicial error in ruling out this evidence. In the first place, no foundation was laid to show anything other than that the witness's opinion as to the relationship of the defendant with the suggested welfare committee was asked for and, second, the questions asked called for the witness's conclusions and were therefore not admissible.

There are but two questions presented by this appeal:

1. Does the playing of bingo constitute gambling as the word is used in §13054 GC?

2. Did the court commit prejudicial error in instructing the jury that the ordinance licensing bingo passed by the City Council was declared unconstitutional by the courts?

The court's instructions to the jury on the subject of the bingo ordinance was brought about by the defendant's attempt to introduce evidence into the record on that subject. The defendant's own conduct having made such statement necessary, he cannot now complain that the court's instructions prejudiced his rights. In any event, while not otherwise pertinent, the court's instruction correctly stated the facts about the "Bingo" ordinance. Such claim of error is therefore overruled.

Coming now to the remaining question of error. The statute under which the defendant was charged, that is §13054 GC provides as follows:

"Whoever keeps a room, building, arbor, booth, shed or tenement or canal-boat or other watercraft, to be used or occupied for gambling, or knowingly permits it to be so used or occupied, or being the owner thereof rents it to be so used or occupied, shall be fined not less than thirty dollars nor more than five hundred dollars, or imprisoned not less than ten days, nor more than thirty days, or both."

The defendant, in his brief, sets forth the question intended to be presented by this appeal as follows:

"The principal issue in the case at bar is as to whether or not the court's instruction to the jury relative to the law, was a correct charge. Is the operation of a Lottery for charitable purposes, within the purview of the gambling statute? * * * In effect, the court directed the jury to return a verdict of guilty against the defendant-appellant. We are not concerned so much with any attempted usurpation of the province of the jury by the court or the invasion of the province of fact finding which is the function of the jury, as we are with the patent error in the court's interpretation of what constitutes gambling which is punishable under existing statutory law."

It is conceded that the defendant-appellant operated a bingo game in which the players were required to pay for the right to participate and in which the winner of each game was selected entirely by chance. Under every definition "Bingo" as played for money only under the undisputed evidence in this case, constituted "gambling." If, therefore, the defendant kept a room for the purpose of playing "Bingo"

such conduct would constitute a violation of §13054 GC, as charged in this proceeding. This question was correctly presented to the jury, and upon a fair consideration of the evidence it seems clear that the jury could have come to no other conclusion but that the defendant's guilt was established beyond any doubt whatever.

The defendant's claim that the defendant was not using the room for gambling because the game was being conducted for a charitable purpose, was earlier disposed of in this opinion by finding that the defendant failed to introduce or offer any competent evidence on that subject. Even if it could be said that that question was a necessary issue in this case, that is, that the State must show that the game was played for the defendant's profit, the state made out a prima facie case by introducing evidence that the defendant received the money paid by the players and made payment of portions thereof to the winners, the balance being found in his possession at the time of his arrest. Such evidence unchallenged and uncontradicted, would certainly be sufficient to sustain a verdict of guilty.

But the question of whether or not "Bingo" as shown by the evidence in this case was played for the benefit of, or in part for the financial gain of some charitable enterprise and not for the profit of the defendant, is not an issue in this case. The fact is that Bingo as played at the time and place here in question, constituted "gambling" insofar as the participants, including the defendant, were concerned. Whether, under the evidence, they or any of them could have been prosecuted for the violation of any of the other sections found in the chapter dealing with the subject of Gambling, is not here important. Nor is it material that under some circumstances (because the statutes have not been passed to provide against it) (there being no common law crimes in Ohio) certain conduct that would otherwise clearly constitute "gambling" can not be the subject of a criminal prosecution.

The statutes dealing with the subject of "gambling" are found in Chapter XIV, Part Fourth, Penal, Title I, Felonies and Misdemeanors, of the General Code. Each section of this Chapter deals with a specific subject entirely independent of the subject matter defined and prohibited in any of the other sections. The section here under consideration is not to be read in pari materia with the other sections of this chapter. **State v. Simonian, 77 Oh Ap 210.**

In the case of **State v. Berkman, 78 Oh Ap 432,** the defendant was charged with a violation of §13054 GC, that is, keep-

ing a room to be used for gambling. The prosecution introduced evidence that defendant operated a "numbers game" in the premises. The court said at page 434:

"3. It is urged that 'numbers games' is not 'gambling' as the term is used in §13054 GC, but is a lottery and as used can be prosecuted only under §13064 GC. The material part of §13054 GC is:

" 'Whoever keeps a room . . . to be used or occupied for gambling . . . shall be . . .'

"The word 'gambling' is used here in its broad or generic sense. Gamble means 'to stake money or any other thing of value upon an uncertain event.' (Webster's New International Dictionary) A lottery is a specific type of gambling. This charge is not that the defendants gambled but that they 'did keep a room to be used for gambling.' "

Syllabus 3 of that case reads:

"The word 'gambling' in §13054 GC is there used in its generic sense and is broad enough to include a lottery known as 'numbers game.' "

The evidence clearly establishes that defendant kept a room for the purpose of gambling and did conduct 'gambling' therein. We therefore find that the first claim of error is not well taken.

For the foregoing reasons the judgment is affirmed. Exc. O. S. J.

HURD, J, THOMPSON, J, concur.