**STATE, Plaintiff-Appellee, v. PAYNE, Defendant-Appellant.**

Ohio Appeals, Tenth District, Franklin County.

No. 5619. Decided December 5, 1957.

Samuel L. Devine, Pros. Atty., Fred L. Newsom, Jr., Asst. Pros. Atty., Columbus, for plaintiff-appellee.

Robins, Metcalf & Fisher, Georve V. Fisher, of Counsel, Columbus, for defendant-appellant.

## OPINION

By BRYANT, J.

Clifford Payne and another defendant were found guilty by a jury in the court below of burglary and grand larceny. The indictment charged Payne and three other defendants with breaking into Presutti's Villa, but only Payne's case is before this court.

Payne's first assignment of error is based upon the charge of the trial court with respect to the defense of alibi in which the trial court stated that such defense must be proven by the preponderance of the evidence.

The language of the charge objected to by the defendant is as follows (Bill of Exceptions pp. 169-170):

"THE COURT: My attention has been called to the question of alibi. The Defendant Payne has interposed a defense here of what we call an alibi, which means 'I was some place else at the time.' To prove an alibi you must do so by a preponderance of the evidence, that is the greater weight of the evidence, and, of course, if he proves that and if he was some place else he could not have been guilty of the commission of this crime and you necessarily have to find him not guilty, but as I say he must prove that by preponderance of evidence but if he fails to prove it by preponderance of the evidence the burden is still upon the State of Ohio to prove the Defendant's guilt beyond a reasonable doubt. In other words, a failure to prove an alibi does not necessarily mean that the Defendant is guilty."

Defendant places his chief reliance on the case of **Walters v. State, 39 Oh St 215,** decided in 1883. That case is distinguishable from the one now before this court because the trial court in Walters v. State, supra, told the jury it could not even consider the alibi evidence unless the alibi was proven by a preponderance of the evidence, thus denying the right of the jury even to consider such evidence unless that burden of proof had been met. The syllabus in Walters v. State, supra, is as follows:

"Where the evidence tends to prove the commission, by the defendant, of the crime charged in the indictment, at a particular time

and place, and the defendant offers evidence tending to show that at such time he was at another place, it is error for the court to charge the jury that testimony tending to show such alibi was not to be considered, unless it established the fact by a preponderance of evidence. The burden of proof was not changed when the defendant undertook to prove an alibi, and if by reason of the evidence in relation to such alibi, the jury should entertain reasonable doubt as to the defendant's guilt, he should be acquitted, although the jury might not be able to find that the alibi was fully proved."

In the case now before this court, the trial court, while twice stating that the defense of alibi must be proven by a preponderance of the evidence, then stated that if so proven, the defendant must be acquitted. He then stated that if the defendant had failed to prove the alibi by a preponderance of the evidence, the burden was still on the State of Ohio to prove the defendant's guilt beyond a reasonable doubt.

We do not approve of the charge given by the trial court and feel that where the issue of alibi is properly in the case, the court's charge should conform to the holding in Walters v. State, supra.

But was the issue of the defense of alibi properly in this case at all? In the first place, a defendant who proposes to claim an alibi as a defense is required to file and serve on the prosecuting attorney written notice thereof. Sec. 2945.58 R. C. (§13444-20 GC), the so-called Alibi Law, in effect since 1929, is as follows:

"Whenever a defendant in a criminal cause proposes to offer in his defense, testimony to establish an alibi on his behalf, such defendant shall, not less than three days before the trial of such cause, file and serve upon the prosecuting attorney a notice in writing of his intention to claim such alibi. Notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi."

This statute is mandatory in its terms and although we have examined the transcript of docket and journal entries and the original papers in this case, we are unable to find any evidence that this section was complied with. As the transcript contains no mention of it and the statute uses the word, "file," we are compelled to assume it was not filed.

The failure to comply casts a cloud over the right of a defendant to assert the claimed alibi.

The reasons for the enactment of The Alibi Law, supra, are explained in the opinion by Kinkade, J., in State v. Thayer, 124 Oh St 1, decided in 1931, at page four, as follows:

"This law pertains to a very important feature of the criminal law. It gives the state some protection against false and fraudulent claims of alibi often presented by the accused so near the close of the trial as to make it quite impossible for the state to ascertain any facts as to the credibility of the witnesses called by the accused, who may reside at some point far distant from the place of trial."

In the case of **State v. Nooks, 123 Oh St 190**, decided in 1930, this statute was upheld in a case where the trial court had excluded alibi testimony because the defendant had failed to give the statutory notice. The syllabus in said case is as follows:

"Upon the trial of persons jointly indicted for grand larceny, a verdict of guilty will not be disturbed where no abuse of discretion appears in the trial court excluding testimony offered by the accused for the purpose of proving an alibi, no notice of which has been given the state as provided in §13444-20 GC, such proffered testimony being 'for the purpose of showing the whereabouts of said defendant * * * and to disprove the testimony of * * * witness for the prosecution,' it not appearing that such proffer went to any other subject than that of alibi."

Alibi is defined in 3 Corpus Jur. Secundum 514, as follows:

"Elsewhere, in another place; the presence in another place than that described. **As a defense in a criminal prosecution whereby the accused tends to show that he was at another place at the time the crime charged was committed.** * * *." (Emphasis added.)

Webster's International Dictionary contains this definition:

"1. Law. The plea of having been, at the alleged time of the commission of an act, elsewhere than at the alleged place of commission; * * *."

We note that the trial court defined "alibi" as meaning: "I was some place else at the time."

In **15 O. Jur. 2d, 432, Criminal Law, Section 246, Alibi**, it is said:

"It (the defense of alibi) is a term used merely to support the general issue of not guilty, and applies particularly to a claim that the defendant was elsewhere than where the crime was committed." (Parenthetical material added.)

But apart from that, did the testimony either of Payne, his wife, his step-daughter or his sister-in-law, these being the only alibi witnesses, either establish or even tend to establish an alibi?

The defense of alibi means that the defendant claims he was at some place other than the scene of the crime at the time the crime was taking place, and hence could not have taken part.

The police came upon the get-away car at 3:30 A. M on December 22, 1955, containing three or four men and loaded down with nineteen cases of whiskey which it was agreed by both sides was the same whiskey which was taken in the burglary.

George Beltz, one of the four indicted for this burglary and larceny and who previously had pleaded guilty, testified for the State, and named Payne, Percy "Smokey" Johnson (who was tried with Payne), and Adam Morgan as the other burglars.

Morgan, who had also pleaded guilty, and who twice had told police that Payne and Johnson were two of the burglars, testified for the defense. He said he and Beltz and a third man known to him only as "Charles" were the culprits. He said he did not know the last name or the address of "Charles."

It was the car owned by Morgan that the police came upon at 3:30 A. M., December 22, 1955 during the flight from the scene of the

burglary. What did Payne or any of his alibi witnesses say about Payne's whereabouts at either 3:00 A. M. or 3:30 A. M., on December 22, 1955?

The answer is they said absolutely nothing. Most of the questioning related to where Payne was between 6.00 P. M. and midnight on the evening before the burglary, Wednesday, December 21, 1955.

Payne after detailing his visits to various taverns, testified he came to his home, 275 North Monroe Avenue, Columbus, Ohio, shortly before 1:00 A. M., Thursday, December 22, 1955, retiring about 1:30 A. M. and soon fell asleep until about 2:30 A. M. when he arose and went downstairs in response to a knock on his door to let his sister-in-law, Dolores Wade, enter.

He says he told his wife that Dolores had arrived, but no where makes any statement as to his whereabouts between that time and 6:00 A. M. or 6:30 A. M. the next (Thursday, December 22) morning.

He nowhere denied the direct accusation of his alleged accomplice, George Beltz, that they and two others were a few miles away burglarizing Presutti's Villa, 1692 West Fifth Avenue, Columbus, Ohio.

Payne said he was absolutely sure it was this Thursday morning, December 22, that Dolores Wade came to their house because the afternoon immediately prior thereto (Wednesday, December 21), he (Payne) had taken Dolores downtown to get her paycheck from the Deshler Hilton where she was an elevator operator.

When they got there, he testified, they found that the paycheck was tied up by a garnishee from Columbus Municipal Court, and the two of them went to said court where Dolores got a written release. Armed with that she returned to the said hotel and got part of her weekly pay from the hotel.

That this paycheck was delivered to Dolores on Tuesday, December 20, and the partial release from the Municipal Court also on Tuesday, December 20, was shown beyond any doubt when both the said check and the said court release were produced in court, thereby fixing the arrival of Dolores Wade not on Thursday, but on Wednesday morning.

As a result there is no testimony of any kind or character in the record as to the whereabouts of Payne during the period between 1:00 A. M. and 6:30 A. M., Thursday, December 22, 1955, as Payne, Lois Payne, his wife and Dolores Wade all placed her early morning visit as coming on the morning immediately following the paycheck incident, shown conclusively to have happened on Tuesday, December 20. The testimony of Colleen Payne, the step-daughter, has no bearing as to any events after 1:00 A. M., Thursday, when she was sent to bed by the defendant.

Unless there is some evidence, perhaps even a scintilla establishing or tending to establish an alibi, there is no duty on the part of the court to charge on the question.

Charges as to the law in criminal cases tried to a jury must state "all matters of law necessary for the information of the jury in giving its verdict." Sec. 2945.11 R. C., provides in part as follows:

"**In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict. * * *.**" (Emphasis added.)

Fred Presutti testified that his restaurant was open until 1:00 A. M., that about an hour and a half were used in checking registers, locking up and preparing to leave, that he left between 2:00 A. M. and 2:30 A. M. on the day of the burglary. The police had located and by 3:35 A. M. were in possession of the automobile and the nineteen cases of stolen whiskey.

The time of the crime it would appear was probably around 3:00 A. M. or at least after 2:30 A. M. and prior to 3:35 A. M. on Thursday. The mode of transportation claimed to have been used was an automobile.

Payne testified in detail as to the drinking spots he visited on the day previous. He had heard the testimony of the State's witnesses twice for this was his second trial, so surprise is no longer possible.

Even the simple statement that he stayed at home the balance of the night, or that he didn't leave the house or some other statement of similar import would have put the question of alibi in the case.

Here there simply is no testimony on the question of Payne's whereabouts at the time the crime was committed.

As a result, the charge need not have been given at all, and could not be said to have misled the jury for the reason that there was no evidence on the subject. Hence, we conclude that the error was not prejudicial.

We have not been favored with either brief or argument on behalf of the plaintiff, the State of Ohio. Payne took the stand but was asked not a single question with respect to the burglary or larceny.

The fact is, however, that the trial court did give a charge on the subject which as we have above indicated, in our opinion, was not necessary in view of the absence of evidence on the subject of alibi. What is the effect of the language used by the trial court when it was not necessary to have any instruction on the law of alibi and when the court gave the charge in the form above set forth? In 39 O. Jur. 952, at page 953, Trial, Section 267, there appears the following:

"Clearly, however, the court should not charge the jury on issues which are not presented in the pleadings or by the evidence, although if counsel requests the court to charge specifically on an issue, he will not be heard to complain afterwards that that issue is not in the case."

Cited in support thereof is Varner v. Eppley, 125 Oh St 526. See also State v. Langman, 61 Abs 517.

The record does not disclose specifically who made the request for the charge on the law as to alibi but defendant in his brief, page six, states that he brought this matter to the court's attention and asked for the charge.

For the reasons above set forth, the first assignment of error is not well taken and must be overruled.

The second assignment of error is that the verdict is not supported by evidence establishing guilt beyond a reasonable doubt. With this we can not agree. George Beltz, although an accomplice, told a convincing story which, if believed, was sufficient basis for a conviction.

Payne testified on his own behalf that he had previously been con-

victed of robbery, a felony, and while such conviction was no evidence whatever as to his guilt or innocence of the burglary and larceny, yet the jury was entitled to consider it in determining the question of his credibility. The jury had the advantage of seeing all of the witnesses as they testified and, better than any reviewing court, was in a position to tell the credibility to be attached to the testimony of each witness.

We can not say as a matter of law that the evidence is insufficient to support the verdict and, therefore, the second assignment of error must be overruled.

In light of the aforesaid, both assignments of error are overruled and the judgment of the court below is affirmed.

PETREE, PJ, MILLER, J, concur.