THE STATE OF OHIO, APPELLEE, *v.* BRIDGEMAN, APPELLANT.

[Cite as State v. Bridgeman (1977), 51 Ohio App. 2d 105.]

106

(No. 35647—Decided April 7, 1977.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Jerry Milano, Mr. Daniel R. McCarthy* and *Mr. Robert L. Miller,* for appellant.

PRYATEL, J.   On May 19, 1975, Harold J. Franks, a money order salesman, was attacked by two young men as he left the Fairmount Cut Rate Store on Fairhill Avenue in Cleveland, carrying a briefcase containing cash and

money orders. One of the assailants threw acid in his face and struck him over the head, knocking him to the ground. When he still refused to release his briefcase, the second assailant shot him twice in the chest at close range. When Mrs. Anna Robinson, an owner of the Cut Rate Store, looked out at the scene through the glass door of the store and knocked on the glass, the gunman fired at her, wounding her in the neck. The two assailants then fled with the briefcase to an awaiting getaway car attended by a third young man. The three men sped away.

Defendant Wiley Bridgeman, appellant herein, and two codefendants were indicted by the grand jury of Cuyahoga County for the aggravated murder of Mr. Franks with a specification of aggravated robbery. They were also indicted for the attempted aggravated murder of Mrs. Anna Robinson, with a specification of aggravated robbery, and for the separate offense of aggravated robbery of Mr. Franks. Each of the defendants received a separate trial. The appellant in this case was tried as an aider and abettor, as the attendant of the getaway car.

Trial commenced on August 4, 1975. The key witness for the state was Edward Vernon, a thirteen year old boy who lived in the neighborhood. He testified that on May 19, 1975, while riding on a bus, he saw the appellant driving past just before he reached his bus stop at Fairhill Avenue and Petrarca Avenue. Edward Vernon disembarked at that stop and proceeded toward a point about thirty feet from the Fairhill Cut Rate Store. From there he recognized two young men from his neighborhood standing in front of the store. He saw them attack the victim and flee down Petrarca Avenue to a waiting automobile. He testified that he recognized the appellant, Wiley Bridgeman, standing by the passenger side of the automobile when the two fleeing men approached it. He further testified that he saw Wiley Bridgeman enter the automobile and open the passenger door for them to enter. After they entered, Edward Vernon said the automobile sped off down Petrarca Avenue.

Dr. Charles Hirsch, Deputy Coroner of Cuyahoga Coun-

ty, testified that he performed an autopsy of Mr. Harold J. Franks on the morning of May 20, 1975. His findings revealed that Mr. Franks sustained two blunt impacts to the right portion of his skull and two gunshot wounds from a weapon which had been pressed firmly against his chest. He further testified that just before Mr. Franks died, he suffered acid burns of the face and scalp.

Prior to trial, on July 25, 1975, the appellant filed a timely notice of alibi claiming to have been at the vicinity of 10611-21 Arthur Avenue, Cleveland, Ohio, at the time of the alleged offense.

Upon the conclusion of the state's case, the appellant presented evidence in support of his defense of alibi. Several witnesses, including the appellant, testified that appellant had left his home to run certain errands for friends of the family, or that he was at his sister's house at the time in question. Appellant denied the commission of the alleged crimes, any involvement with the two codefendants, and denied his presence at the scene.

After rebuttal by the state, the jury was instructed on the law and retired to deliberate. Prior to reaching a verdict, the jury propounded two questions to the court as to what certain testimony had revealed. Over the objection of defense counsel, the court read to the jury the complete direct and cross examination of Edward Vernon. After that testimony was read, the court, again over the objection of defense counsel, refused to read the rebuttal testimony of this witness.

On August 12, 1975, the jury returned a verdict of guilty to all three counts of the indictment. Finding that no mitigating circumstances existed, the judge sentenced the appellant to die in the electric chair on April 22, 1976. The execution has been stayed pending the outcome of this appeal.

*Assignment of Error No. I*

"The trial court erred by improperly limiting the scope of defense counsel's inquiry during the voir dire examination."

Both the appellant and the appellee agree that under

the laws of Ohio the trial court has the discretion to regulate the scope of counsels' inquiries during voir dire examination. *State* v. *Anderson* (1972), 30 Ohio St. 2d 66; *The Dowd-Feder, Inc.*, v. *Truesdell* (1936), 130 Ohio St. 530; *Krupp* v. *Poor* (1970), 24 Ohio St. 2d 123; *Salerno* v. *Oppman* (1936), 52 Ohio App. 416.

In this case the trial judge, in outlining his duties to the voir dire panel, said:

"The court does have the obligation of conducting the voir dire examination and to confine counsel to proper questions on voir dire examination.

"If in the event I do interfere, without objections on either side, why, I'm in no way attempting to influence the selection of the jury in anyway but it is my duty to prevent counsel asking improper questions on voir dire.

"In other words, they will not go into the law. They will not assume fact. They will not go into the credibility of the witnesses."

Further, he reminded counsel: "You cannot go directly or indirectly on matters of law."

R. C. 2945.27 provides:

"The judge of the trial court shall examine the prospective jurors under oath * * * as to their qualifications to serve as fair and impartial jurors, but he shall permit reasonable examination of such jurors * * * by the defendant or his counsel."

Criminal Rule 24(A), insofar as applicable here, reads as follows:

"Any person called as a juror for the trial of any cause shall be examined under oath * * * as to his qualifications. The court may permit the attorney for the defendant * * * and the attorney for the state to conduct the examination of the prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the state and defense to supplement the examination by further inquiry."

The standard of the court's discretion in limiting the examination of the venire by counsel is reasonableness. R. C. 2945.27. The trial judge has the right to control all

proceedings and to limit the trial to relevant and material matters with a view toward the expeditious and effective ascertainment of the truth regarding the matters at issue. R. C. 2945.03.

While it is solely the responsibility of the trial judge to give the law that governs the trial, such responsibility does not preclude counsel from questioning the panel on matters of applicable law so long as counsel states the law fairly and accurately, and couches it in language that makes it clear that the court is the final arbiter of the law. Counsel have a duty to select a jury that will not only properly decide the facts but apply the law given by the court to the facts as the jury finds them to be. Counsel may inquire of the panel whether it will hold the state to its burden of proving each element of the offense beyond a reasonable doubt, if the judge so instructs the panel. Such latitude is inherent in the rule that permits counsel to supplement the court's examination by further inquiry. To determine the bias, prejudice or partiality of the voir dire panel on the law and the facts is the duty of counsel no less than that of the court. Such inquiry of the panel should be sufficiently flexible to include matters of applicable law not reached by the court. Counsel should be permitted to probe into areas where the responses to the court's questions were incompletely or hesitantly given. The trial judge must allow for the selection of a jury that will evaluate the evidence presented by the parties and apply the law given by the court fairly and impartially.

In the case at bar, we have examined the entire voir dire proceedings. While the court was somewhat more rigid than courts usually are in capital cases, as the questioning progressed the judge adopted a wider latitude in his rulings. In many instances, that which he initially denied he later permitted. We noted too that the trial judge, in sustaining objections to proffers said: "[S]ome of these matters may be requested or included * * * in the court's discretion at the time of the instructions in the law following argument." No such requests were made of the court when counsel was invited "to approach the bench

so that they might further assist the court here." Finally, defense counsel, when informed by the court of his peremptory privilege (to wit: "[T]he defendant has the second opportunity") replied: "[J]udge, the defendant at this time is satisfied with the panel as it sits in the box." Viewing the voir dire in its entirety, we cannot say that the trial judge abused his discretion.

Accordingly, we overrule assignment of error number I.

*Assignment of Error No. II*

"The charge given to the jury was prejudicial in that it contained numerous errors of omission, as well as commission."

Five (1, 2, 3, 6 and 8) of appellant's eight specific complaints to the court's charge are as follows:

"1. The court did not sufficiently describe circumstantial evidence and the manner in which the jury should treat inferences drawn therefrom.

"2. The court neglected to state that extra credibility should not be attached to the testimony of police officers.

"3. The court failed to discuss the testimony of expert witnesses and how it should be treated by the jury.

"6. The court's definition of complicity was inadequate.

"8. The court did not sufficiently explain the verdict forms."

The appellant's only objection at trial to any of these alleged errors was a general exception made after the jury had retired to consider its verdict.

The appellant argues that while errors of omission must normally be the subject of specific objections, errors of commission will justify a reversal even without a specific objection of counsel. *State* v. *McCoy* (1913), 88 Ohio St. 447, at 452, 453; *State* v. *Lynn* (1966), 5 Ohio St. 2d. 106, at 109.

Criminal Rule 30, in effect at the time of this trial, provides:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies of such

requests shall be furnished to all other parties at the time of making such requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. The court need not reduce its instructions to writing.

"No party may assign as error *any portion of the charge or omission therefrom* unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." (Emphasis added.)

As can be seen, the rule no longer recognizes a distinction between errors of omission and commission. Each requires a specific objection to preserve the issue for appeal. In the recent case of *State* v. *Roberts* (1976), 48 Ohio St. 2d 221, at 226, the Ohio Supreme Court construed this rule in the following manner:

"* * * Crim. R. 30 puts the burden of timely objection upon the party making the subsequent assignment of error; this applies to the *positive giving* of instructions to the jury as well as the *omission* of them." (Emphasis added.)

Therefore, we hold that appellant's failure to object specifically to items 1, 2, 3, 6 and 8 of Assignment of Error No. II, as well as his failure to state his grounds for such objections, in time for the trial court to correct any errors before the jury retired to deliberate, precludes his assertion of them now. Accordingly they are overruled.

We do not view these five assigned items of "error" as requiring our consideration as "plain error" and as "defects affecting substantial rights" since the appellant does not submit them as such, and further because the defense here was essentially not so much a dispute of the commission of the crimes as it was a claim of alibi—that is, that the defendant was elsewhere.

The remaining items (4, 5, and 7)[1] of Assignment of Error No. II are as follows:

---

[1] None was specifically objected to at the time of trial.

"4. Of extreme significance is the fact that the court gave no definition whatsoever of aggravated robbery, attempted aggravated murder, or aggravated murder. The court did not state the elements that must be proved in order to arrive at a valid verdict, and did not define the requisite degree of culpability for each element.

"5. The court neglected to discuss the specifications aspect of the indictment.

"7. The court made no mention of the defense of alibi, in spite of the fact that appellant filed a notice of alibi and that he and several witnesses attempted to disprove the charges by reason of alibi."

Criminal Rule 52(B) permits the raising on appeal of plain errors and defects affecting substantial rights even though they were not objected to at trial. Appellant urges that items 4, 5 and 7 are of such magnitude that they warrant our intervention under this rule.

As to items 4 and 5, it is undisputed that the court neither outlined the elements of any of the charges nor defined the requisite degree of culpability for each element, and did not discuss the specification aspects of the indictment.

Where the judge in a criminal case omits an element of the offense in his charge to the jury, this is plain error as described in Criminal Rule 52(B) and may be considered by the reviewing court although the omission was not objected to at trial under Criminal Rule 30. *State* v. *Brewster* (1976), 1 Ohio Op. 3d 372.

On this issue in the case at bar the trial court charged the jury as follows:

"In your consideration of the case, you will consider all the evidence that you have heard, which has been the testimony received from the witnesses and the exhibits admitted during the trial, and any facts agreed upon which the court requires you to accept as true."[2]

"The evidence has disclosed beyond question that Harry

---

[2] We find in the record no facts agreed upon which the court required the jury to accept as true.

Franks was slain purposely during the course of an aggravated robbery. The evidence discloses that one Ann Robinson was shot during the course of an aggravated robbery, and the evidence discloses in fact an aggravated robbery was accomplished.

"Getting down then to the issues.

"If you find beyond a reasonable doubt upon the credibility of the state's witness, Edward Vernon, that the Defendant participated in the events that have been related to you over the past six days, it will be your duty to find a verdict of guilty upon all counts including the specifications.

"If you do not so find beyond a reasonable doubt that the defendant, Wiley Bridgeman, participated in these events, it will be your duty to find him not guilty upon all counts.

"As I indicated, in considering this case you will consider all the evidence in the case."

The effect of such an instruction has been ruled upon in *Morgan* v. *State* (1891), 48 Ohio St. 371. In the *Morgan* case, the state's evidence tended to show that the crime of robbery was committed at a particular time and place by seven armed men, disguised by masks, who broke into a house and terrorized its nine occupants. The defendant's evidence tended to establish an alibi and good character. The court instructed the jury that certain facts were shown by the uncontroverted evidence in the case. The jury returned a verdict of guilty.

On appeal, the Ohio Supreme Court stated:

"It is altogether probable that the jury in this case would have agreed with the judge, without direction, that the facts stated by him were conclusively shown. Yet the defense had introduced testimony tending to show contradictory statements on the part of some of the state's witnesses, especially as to the identity of the participants, which, to a greater or less degree, tended to weaken the force of all their statements, and it was the right of the defendant to endeavor, by all legitimate argument, as well as by cross-examination, to create a doubt in the minds of

the jurors, and it was the province of the jury, and the jury alone, to determine whether or not a crime had been committed, and if it had been, the time of it and the manner of it, as well as who were the perpetrators." *Id.* at 376.

Accordingly, the court in *Morgan* held, in paragraph three of the syllabus:

"The plea of not guilty in a criminal case puts in issue all facts material to be proven by the state, as well [as] those relating wholly to the *corpus delicti* as those relating to the connection of the accused with the offense. The issue thus made is to be tried by the jury and not by the court, and where the defendant has not, by his testimony, or otherwise, admitted the claim of the state as to the body of the crime, it is error for the court to recite to the jury the substance of the state's evidence giving the details of the circumstances surrounding the commission of the alleged offense and instruct them that those facts are shown by the uncontradicted evidence in the case."

R. C. 2945.11 states:

"In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict. * * *"

We hold that under this language the court's opinion of the evidence does not obviate the necessity of detailing and explaining all matters of law.

In *Premack* v. *State* (1908), 11 Ohio C. C. (N. S.) 364, the Circuit Court for Hamilton County held that where a defendant entered a plea of not guilty, he placed in issue all the material facts, including the *corpus delicti.* Since the defendant in *Premack, supra,* did not take the stand in his own behalf, and he did not by his testimony, or otherwise as shown by the record, admit the claim of the state as to the body of the crime, a charge to the jury to the effect that the theft of goods was not disputed or open to controversy was an invasion of the province of the jury and constituted reversible error.

More recently the Ohio Supreme Court, in *State* v. *Nutter* (1970), 22 Ohio St. 2d 116, approved and followed paragraph three of the syllabus of *Morgan* v. *State, supra,*

and ruled that where the insanity of the victim was an essential element of the crime of carnal knowledge of an insane person, it was prejudicial error for the court to inform the jury of his ruling as to the victim's competency to testify, and to intimate his opinion as to her sanity. The court summarized the applicable law as follows:

"* * * First, a plea of not guilty requires the state to prove all material facts including those relating to the *corpus delicti*. *Morgan* v. *State*, 48 Ohio St. 371, paragraph three of the syllabus. The *corpus delicti* of a crime is the body or substance of the crime and includes the criminal act itself. *State* v. *Maranda*, 94 Ohio St. 364, paragraph one of the syllabus. Moreover, the state, in proving the *corpus delicti*, must establish by evidence each essential element of the crime as charged and as specified in the statute. *State* v. *Miclau*, 167 Ohio St. 38, paragraph one of the syllabus.

"The state's burden in establishing the guilt of an accused is to prove each element beyond a reasonable doubt. R. C. 2945.04. Since the existence of an element of a crime is a factual matter, it is within the peculiar and exclusive province of the jury to determine that question of fact. See R. C. 2945.11; *Robbins* v. *State*, 8 Ohio St. 131. In addition, Sections 5 and 10 of Article I of the Ohio Constitution, which declare the inviolability of a jury trial and guarantee an accused an impartial jury, inferentially require that factual questions relating to the crime are within the exclusive province of the jury." *Id.*, at 118.

Upon these principles the court based its conclusion that:

"The trial judge * * * invaded the province of the jury when he made two statements * * * concerning the incompetency of the alleged victim to testify. We agree with the Court of Appeals that the statements not only implied that the woman was insane but also partially usurped the function of the jury by giving the trial court's inferential opinion as to the existence of an essential element of the crime.

"It is well to remember the time-honored principle

that 'issues of fact are to be tried by a jury. When they are so tried, the jury, and not the court, are to find the facts.' Thayer, *A Preliminary Treatise on Evidence,* 189. It follows that any expression of the trial court, and particularly any positive statement to the jury which indicates or even intimates to the jury the court's opinion on the facts in evidence is error. See *Zimmerman* v. *State,* 42 Ohio App. 407, 408." *Id.,* at 119.

We hold therefore that the language in the court's charge[3] was within the prohibitions of the authorities cited, *supra.*

The appellee claims, and the appellant denies, that these alleged errors were induced by the suggestion of appellant's counsel (off the record, prior to the jury charge) that the elements of the crimes and the standard jury charge for alibi need not be read to the jury. It is, of course, the settled law of the state that the reviewing court is bound by the reported proceedings in the lower court and that we cannot consider what has not been certified to us for review. Such a claim therefor cannot be recognized or considered. *Baldwin* v. *State* (1833), 6 Ohio 15; App. R. 12(A).

Appellee argues further that instructions as to elements of the crimes were unnecessary, inasmuch as appellant's counsel allegedly admitted that the crimes had been committed, leaving to the jury only the question of whether the appellant was at another place at the time they were committed, when he said in his closing argument:

"There can be no question in my mind, and Mr. Mc-Carthy [co-counsel for appellant] and I stipulated from the beginning [we find no such stipulation in the record] this is the man who was killed, he was killed about 4:00 o'clock in the afternoon on Monday, the 19th, at Fairhill and Petrarca, no quarrel about that.

"They keep showing you these pictures, and for what

---

[3] "The evidence has disclosed beyond question that Harry Franks was slain purposely during the course of an aggravated robbery. The evidence discloses that one Ann Robinson was shot during the course of an aggravated robbery, and the evidence discloses in fact an aggravated robbery was accomplished."

reason I don't know. There can be no question the man is dead and he was killed the way they said he was killed. Someone shot him twice and threw acid in his face.

"Each and every witness brought to you by the state indicated that Mr. Franks entered the store at about 3:30 and 4:00 o'clock, somewhere in there; that he was killed approximately 3:55. There can be no quarrel with that, that he was killed as he exited the store, I assume going back to his car.

"There can be no question about that from either myself, Mr. McCarthy, or the prosecutor, that's the way it happened."

Comments by appellant's counsel must be considered as nothing more than his opinion of the evidence adduced at the trial which the jury may or may not consider in reaching its verdict. *State* v. *Champion* (1924), 109 Ohio St. 281, 289. Neither the opinion of counsel on the evidence nor that of the court can be used to render unnecessary the duty of the court to instruct on the law relating to the elements of the crimes charged, the degree of culpability and the specifications involved. The jury is the exclusive judge of all questions of fact, and neither the court nor counsel can preempt that responsibility from the jury.

In the case at bar, we cannot construe appellant's closing argument as anything more than not denying that the decedent was shot twice and that acid was thrown in his face. The context of the comment suggests that counsel sought to diminish the emotional impact of the coroner's photographs on the jury. There is no admission, nor can there be any agreement of counsel that could relieve the court of the duty to instruct the jury on all matters of law necessary for the information of the jury in giving its verdict on the facts.

We hold that the failure to instruct the jury on the elements of the crimes charged, the culpability and the specification was plain error substantially affecting the right of the defendant to a fair trial. We, therefore, sustain items 4 and 5 of Assignment of Error No. II.

As to item 7 (alibi), again, does the defendant's failure to seasonably request a specific charge on alibi prevent him from urging error, or is the court's failure to instruct the jury on alibi such plain error that it warrants our intervention?

A survey of Ohio cases considered by reviewing courts provides little assistance, probably because the court usually gives an alibi instruction if there is some testimony to support it.

In *State* v. *Viola* (1947), 51 Ohio Law Abs. 577,[4] the court concluded that a charge on alibi need not be given in the absence of any evidence on alibi.

In *State* v. *Payne* (1957), 104 Ohio App. 410, the court held that although a charge given to the jury on alibi was erroneous, it was not prejudicial. It stated:

"Unless there is some evidence, perhaps even a scintilla establishing or tending to establish an alibi, there is no duty on the part of the court to charge on the question. * * *

"Here there simply is no testimony on the question of Payne's whereabouts at the time the crime was committed.

"As a result, the charge need not have been given at all, and could not be said to have misled the jury, for the reason that there was no evidence on the subject." *Id.*, at 416, 417.

In *State* v. *Goode* (1962), 118 Ohio App. 479,[5] the defendant was charged with making telephone threats or causing harassment prohibited by R. C. 4931.31. The law under which he was charged provided that "any use, communication, or act prohibited by this section may be deemed to have occurred or to have been committed at either the place at which the telephone call was made *or* was received." (Emphasis added.) Upon his claim that he was elsewhere than in the county where the telephone call was received, the court ruled that his claim of being elsewhere, even if believed by the jury, would not necessarily establish the de-

---

[4]Appeal dismissed for want of debatable constitutional question, in 148 Ohio St. 712; *certiorari denied*, in 334 U. S. 816.

[5]Appeal dismissed for want of debatable constitutional question, in 174 Ohio St. 232.

fense of alibi. The court found that where the statute anticipated that the caller would be elsewhere, it was doubtful that the defense of alibit was an issue at all. Under these conditions, the reviewing court found that the defendant was not prejudiced by the failure of the trial court to charge on alibi.

In *Viola, supra,* and *Goode, supra,* the court pointed out that defense counsel did not request that alibi instructions be given. Neither of these cases appears to be decided solely, if at all, on the ground that no request was made. Nor does it appear that a timely request would have changed the results. In *Payne, supra,* the court noted that the record did not disclose who, if anyone, made the request for the charge on the law as to alibi. As can be noted, these Ohio cases provide little guidance in our case, in which alibi was the sole defense, notice of alibi was properly filed, ample evidence was adduced in its support, and yet no instruction was given by the court, or requested.

We have examined the cases of other jurisdictions which have faced this factual situation, particularly those which limit the courts' duty to charge the jury on alibi upon request from defense counsel. Generally, the applicable laws as to the trial courts' duty are not comparable to ours in Ohio.

In Pennsylvania, the trial court need not give an alibi charge without a specific request, but the law requires the trial judge "to carefully instruct the jury as to the relationship of the *evidence* of the prosecution and the *evidence* of the defendant as each bears upon the essential elements of the crime charged." (Emphasis added). *Commonwealth* v. *Bonomo* (1959), 396 Pa. 222, 231, 151 A. 2d 441, 446. In our judgment, this legal requirement of parallel evaluation of the evidence of each side mutes the necessity of an alibi charge. A comparison of rival claims achieves the same purpose as a charge; namely, that of insuring that the jury will consider the alibi evidence of the defendant no less than the evidence of the state.

We believe that the Tennessee Supreme Court fairly evaluated the cases of conflicting jurisdictions in *Poe* v.

*State* (1963), 212 Tenn. 413, 420, 370 S. W. 2d 488, 491, where it said:

"We are not unmindful of the conflict of authority in other jurisdictions, some cases holding there is no duty on the trial judge, without a special request, to instruct the jury on the subject of alibi and other cases holding there is such duty. See cases collated in the annotation, 118 A. L. R. 1303, 1309 [and in the annotation, 72 A. L. R. 3d 547]. But, since these cases turn largely upon the procedural law of their respective jurisdictions, which differs in different states, they are not controlling or very persuasive as to what should be the rule in this State."

In *Poe* v. *State, supra,* the Supreme Court of Tennessee faced a situation close to our own. In that case the court was legally bound to apply a principle similar to the one in Ohio relating to the duty of a trial judge in his instructions to the jury. In Tennessee, "[t]he general principle in criminal cases is that there is a duty upon the trial judge to give the jury a complete charge on the law applicable to the facts of the case. The defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the Judge." (Citations omitted.) *Id.,* at 416.

The defendant was charged with assault and battery with intent to commit rape. Alibi was his only defense. Testimony to establish it was presented by the defendant and others. Defense counsel made no specific request for an alibi charge. The trial court charged the jury upon the subject of reasonable doubt, but failed to give any instructions on the issue of alibi.

Applying the above-quoted principle, the Supreme Court of Tennessee held that the trial court's failure to charge on alibi was reversible error, even without a specific request, because the issue of alibi was fundamental to the defense and an alibi instruction was essential to a fair trial.

In Ohio, in a trial to a jury "the court must state to it all matters of law necessary for the information of the jury in giving its verdict." R. C. 2945.11.

We hold that where a defendant seasonably filed his notice of alibi, and presented his own testimony as well as that of other witnesses in its support, and relied upon it as the cornerstone of his defense, he was entitled to a charge on alibi. We are unable to see how a jury has received "all matters of law necessary for the information of the jury, in giving its verdict" if a charge on alibi was omitted. We hold that such a charge is a matter of right and not of request. To fail to give such a charge is a plain error or defect affecting the defendant's substantive rights within the framework of Criminal Rule 52(B).

In the absence of any instruction from the court on alibi, the jury may well have been left with the mistaken notion that, not having proved his alibi, the defendant was not entitled to an acquittal. Or, after the defendant offered eight witnesses in support of his defense of alibi, with the court remaining silent on the subject, the jury could have easily concluded that the alibi was not important enough for them to seriously consider it. In short, the jury may well have decided that the defense of alibi was not worth any more attention from the jury than it received from the trial court. We believe that the law should not countenance such risks.

The court has a duty to give the jury a charge on all the law applicable to the facts of the case. In our judgment, that includes proper instructions which would fairly submit the issue of the defendant's alibi, without any special request for such instructions. It was not only fundamental to his defense but essential to a fair trial.

We join those jurisdictions which recognize the duty of the court to instruct the jury upon the subject of alibi, with or without the request of counsel, where alibi is the defendant's sole defense and is supported by his testimony as well as by the testimony of other witnesses. *Poe v. State* (1963), 212 Tenn. 413, 370 S. W. 2d 488; *State v. Belin* (1943), 201 S. C. 490, 23 S. E. 2d 746; *State* v. *Searles* (1964), 82 N. J. Super 210, 197 A. 2d 384; *Brown* v. *State* (1970), 122 Ga. App. 470, 177 S. E. 2d 509; *Rider v. State* (1888), 26 Tex. Crim. 334, 9 S. W. 688. See also *State v. Nichols* (1925), 117 Kan. 630, 232 P. 1058.

We agree that it is not enough, in criminal cases involving the life and liberty of the accused, that the law of the case be partially stated. The accused is entitled to all the law that the facts of the case require, and nothing short of that will satisfy the demands of justice.

We therefore sustain item 7 of Assignment of Error No. II.

*Assignment of Error No. III*

"In response to a question by the jury, the court committed error in reading all of the direct and cross examination of a witness—over objection; and refusing a request to read the rebuttal testimony of said witness—over objection."

The record shows that after the jury retired for deliberations, it sent a note signed by the foreman asking the court to answer the following questions:

"One: Did Vernon go to the corner and see Rickie and Ronnie run down the street and get in the car? * * *

"Number two: According to testimony was Wiley Bridgeman standing outside the car, or was he sitting in it while opening the door?"

There was testimony throughout the transcript of the direct and cross-examination of the state's witness, Edward Vernon, that would bear on these questions. The transcript of his rebuttal testimony offered no information on the jury's inquiries and therefore was properly excluded from the jury.

The method used by the trial court in answering questions submitted by the jury is within its discretion. *State* v. *Jessop* (1952), 71 Ohio Law Abs. 429, following *State* v. *Weil* (1950), 56 Ohio Law Abs. 136.° See also annotation 50 A. L. R. 2d 176, 192 and cases cited therein.

In *State* v. *Jessop, supra,* the appellant had urged the trial court to answer the questions submitted by the jury by reading the entire testimony of each of the witnesses instead of only parts of the same, but the court read only that part of a witness' testimony

°Appeal dismissed for want of debatable constitutional question, in 153 Ohio St. 586.

which answered the questions propounded. In another Ohio case, *Itskin* v. *Ohio* (1935), 51 Ohio App. 211, a jury request was refused which asked to have all the testimony of all the witnesses examined. Then a jury request to have certain parts of the testimony of two witnesses read to them was complied with by having the court reporter read the same to the jury in open court in the presence of all the parties. In neither case was the method chosen held to be prejudicial error.

This assignment of error is overruled.

*Assignment of Error No. IV*

"The sentence imposed by the court violated the prohibition of the United States Constitution against cruel and unusual punishment."

The sentence imposed by the court, death by electrocution for appellant's participation in the crime of aggravated murder with the specification of aggravated robbery, does not violate the prohibition of the United States Constitution against cruel and unusual punishment. *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, following *Gregg* v. *Georgia* (1976), 428 U. S. 153, 49 L. Ed. 2d 859; *Jurek* v. *Texas* (1976), 428 U. S. 262, 49 L. Ed. 2d 929; and *Proffitt* v. *Florida* (1976), 428 U. S. 242, 49 L. Ed. 2d 913, distinguishing *Woodson* v. *North Carolina* (1976), 428 U. S. 280, 49 L. Ed. 2d 944 and *Roberts* v. *Louisiana* (1976), 428 U. S. 325, 49 L. Ed. 2d 974.

This assignment of error is overruled.

In view of our ruling on items 4, 5 and 7 of Assignment Of Error No. II, to the effect that they represented plain error and defects affecting the substantial right of the defendant to a fair trial, we reverse and remand.

*Judgment reversed and cause remanded.*

PARRINO, P. J., and KRENZLER, J., concur.

KRENZLER, J., concurring. I reluctantly concur in the judgment of reversal. Because the offenses charged are

heinous and vicious crimes and because there is substantial evidence of the defendant's guilt, I find it very distasteful and unpleasant to join in this judgment of reversal. This reversal is not based on the evidence presented, nor upon the conduct of the defendant, the prosecuting attorney, or the defense attorney. It is based solely upon the prejudicial error committed by the trial judge in two respects. First, the trial judge did not instruct the jury on each and every element of the crimes charged as required. Second, the defendant presented a defense of alibi and several witnesses testified on his behalf. Yet, the trial judge did not instruct the jury in regard to the defense of alibi.

Both of these omissions constitute prejudicial error and require a reversal and a new trial for the defendant.