**State v. Murray**
*[Cite as 2 AOA 487]*

*Case No. 89CA004648*
*Lorain County, (9th)*
*Decided April 18, 1990*

*R.C. 2903.07*
*R.C. 4511.21*

*John Lowther, Oberlin Prosecuting Attorney, P. O. Box 147, 110 Herrick Ave., W., Wellington, OH 44099 for Plaintiff.*

*Jerome C. Tinianow and Kim M. Hastings, Attorneys at Law, 800 Nat'l. City E. 6th Bldg., Cleveland, OH 44114 for Defendant.*

QUILLIN, J.

Defendant-appellant, Christopher Murray, appeals his convictions for vehicular homicide in violation of R. C. 2903.07 and failure to stop in an assured clear distance in violation of R. C. 4511.21. We reverse.

On June 22, 1988, Murray drove his tractor-trailer rig over the top of Clementine Thornsberry's Cadillac at the intersection of State Route 18 and State Route 301. Thornsberry's Cadillac was stopped at the intersection, facing south, waiting to make a left-hand turn onto Route 18. A second tractor-trailer rig was approaching the intersection from the opposite direction. After Murray's tractor-trailer struck Thornsberry's vehicle. Thornsberry's vehicle hit the oncoming tractor-trailer as the second tractor-trailer passed through the intersection. Murray's tractor-trailer then sideswiped a pick-up truck which was northbound on Route 301. Murray's tractor-trailer then struck a barn on the southeast side State of Route 301. The impact with the barn caused the tractor-trailer to jack-knife. Thornsberry died as a result of her injuries.

Murray was charged with vehicular homicide in violation of R.C. 2903.07 and failure to stop in an assured clear distance in violation of R.C. 4511.21. A jury, which took the unusual act of recommending lenience, found Murray guilty of both charges.

Murray raises two assignments of error.

*ASSIGNMENT OF ERROR I*

"The trial court erred in failing to give the appellant's requested jury instructions with regard to unforeseen fainting spells or loss of consciousness and legal excuse."

A defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence. *State* v. *Williford* (1990), 49 Ohio St. 3d 247, 251.

At page 106 of the transcript of proceedings we find:

"THE COURT: We're back on the record, then. Let's approach the request for specific Jury instructions. And I will just go down these as they are listed in your request for Jury instructions.

"Jury Instruction No. 1, I'm using; and it has to do with vehicular homicide. Criminal negligence will be used. Due care will be used. Substantially, Item No. 4 will be used. Violation of Statute Ordinance, Item 5, 5 will be used.

"Item No. 6, unforeseen fainting spell or loss of consciousness, will not be used. Item No. 7, speed limits, will be used. Excuse to speed limits will not be used.

"Elements as to speed limit, now, I have to see. Elements as to speed limit will be used except the last portion of the sentence, to wit, "And that such failure to stop an assured clear distance ahead was not caused by a sudden fainting spell or loss of consciousness from an unforeseen cause." That portion will not be used, but the balance of the elements will be used, all right?

"MR. ECKSTEIN: For the record, I would raise an objection to the requested instructions that are ruled not admissible in this case, or not going to be used in this case.

"Number 1, unforeseen fainting spell and loss of consciousness, as indicated, I think the

case law clearly states that there can't be any negligence in those situations.

"And, with respect to the speed limits, the same reasons with respect to all of the other exclusions. I feel that the case law clearly indicates that those exclusions must be given to the Jury as legal justification or excuses for no negligence.

"You know, without those charges, there's nothing in here the Jury can find in the instructions on law that indicate that, in fact, if some unforeseen fainting spell or loss of consciousness occurs, there is no negligence. And that's the law in the State, as I see.

"THE COURT: All right. You will have your exceptions, then. And we will take a short recess."

The parties agree that if Murray was unconscious at the time of the accident because he, without fault, suffered a blackout, this would have constituted a defense to the crimes charged in the indictment. See 4 Ohio Jury Instructions (1989) 62, Section 409.05. Accordingly, the question is whether Murray introduced sufficient evidence to make this instruction pertinent to the facts of this case. See, *e.g., Ricks* v. *Jackson* (1959), 165 Ohio St. 254; State v. *Bridgeman* (1977), 51 Ohio App. 2d 105, 119-112.

Murray testified that he remembered approaching the intersection of Route 18 and Route 301 and remembered beginning to brake, but that he did not remember anything until he was being tossed around in the cab of the tractor-trailer after he had already passed through the intersection; that Murray believed that he had suffered a blackout because there was no skid on the road and he did not revive until after his tractor-trailer had collided with the barn; that he had suffered a blackout one time before when he was seven-years old; and that he sought medical treatment because he did not know what had happened to him, which made him afraid to drive.

Dr. Darshan Mahajan, Murray's treating physician, testified that he examined Murray on August 9, 1988, giving him a general examination and a neurological examination. Dr. Mahajan also testified that based on his findings, Murray's history, and the police report, he believed that Murray had suffered a syncopal episode at the time of the accident. As a result, for a short time Murray's brain did not receive a sufficient supply of blood due to dehydration. Dr. Mahajan also stated that normally, the person falls flat so that the body can reestablish the blood supply within ten to fifteen seconds. However, because Murray was supported by the steering wheel and the seat, Murray's episode probably lasted longer. Dr. Mahajan also testified that a person is less likely to fall asleep when they are doing some type of activity, such as slowing down their vehicle. It was also his opinion that the initial impact would have awakened any drowsy or sleep-like person so that Murray could have responded by stopping the tractor-trailer had he been asleep, rather than the tractor-trailer stopping itself when it struck the barn. Accordingly, the evidence that Murray was braking at the time of the accident, that Murray failed to respond to the first impact with Thronsberry's Cadillac, and the extremely high temperature combined with an unairconditioned cab, supported Dr. Mahajan's expert opinion that Murray suffered a blackout rather than fell asleep.

While the state contradicted this testimony with other evidence, we hold that Murray introduced sufficient evidence to have warranted a jury instruction on a blackout defense.

Because the trial court's general jury instructions failed to even mention Murray's defense, the trial court failed to provide the jury with all matters of law necessary for the information of the jury as required by R.C. 2945.11.

The assignment of error is well taken.

### ASSIGNMENT OF ERROR II

"The trial court erred in that its written judgment entry of the sentence imposed upon the appellant did not accurately reflect the actual sentence pronounced in open court."

Based on our disposition of the first assignment of error, we reverse Murray's conviction and remand for a new trial. Accordingly, any error in Murray's sentence is no longer at issue.

The assignment of error is overruled.

The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*

CACIOPPO, J.
CIRIGLIANO, J.
Concur