Appellant, Gerald Wilson, appeals his convictions claiming he was denied a fair and impartial jury. For the following reasons we disagree and affirm.
Wilson was indicted on twenty-two counts of rape and gross sexual imposition for sexually abusing his then fourteen-year-old stepdaughter. In impaneling the jury, the following colloquy took place:
 MR. DOBECK: You are with Arabica Coffee, correct? And Mr. Hero doing their marketing?
JUROR M: Yes.
 MR. DOBECK: They are opening Arabica now in Parma at State Road, Pleasant Valley. I happened to be at the Parma Planning Committee when they approved that so everything flew by with flying colors. My wife is glad to hear that its opening.
Judge Brian J. Corrigan excused only one juror for cause with neither the State nor Wilson exercising any peremptory or for cause challenges.
Trial commenced, and, following the testimony of the victim, Juror L, an Ursuline nun for over 27 years, advised the judge, outside of the presence of other jurors, that she was dissatisfied with the law as it pertained to cross-examination of the child victim. The judge advised the attorneys of this conversation.
 MR. DOBECK: Judge, I think its important that it be spread on the record exactly what she said. I mean she did indicate that she wished to speak with the Court outside of the presence of the other jurors. And — its my understanding, Judge, that she was its not my understanding that she mentioned Mr. Shaughnessy by name, but she just felt that the law shouldn't have permitted the cross-examination to go into the areas that it did. Is that correct?
 THE COURT: The gist of it was that she thought that the victim was being "disrespected." Her term. And she didn't say anything specifically with Mr. Shaughnessy. But after the testimony was done when I told her that this witness would no longer be giving any testimony and therefore neither would be direct examined or cross-examined she indicated to me that she felt she could carry on with her assignment.
MR. DOBECK: Did she say she would be fair?
 THE COURT: I can't say that I asked her that question specifically.
 MR. DOBECK: You had mentioned that back to me and that's why I want to be sure. But Judge, I also want to say that some of the areas I felt of cross-examination had gone in an area that I thought was not relevant. I objected, it was overruled and I lived with that. But as long as we've had this type of case and defense attorneys have had to decide as to what approach to take with child witnesses or 14-year-old witnesses Mr. Shaughnessy chose to go after the witnesses and go after the credibility. And so that's a tactical decision. That was a decision he made. As long as she contends that she could go on and do her duty I thought there was absolutely no basis for removal of her. And, in fact, I would object stridently that she not be removed.
 MR. SHAUGHNESSY: Judge, in response, the lady came to you and was concerned. Now, she came to the door here and wanted to talk to you. Wanted to talk to you out of the presence of the other jurors and complained that the witness was being disrespected and obviously she didn't like it. Obviously, she's upset. Obviously she's a nun. And it was — perhaps I should have drawn this out on voir dire but this is the system. This is the process.
 Apparently, she doesn't like the process. Apparently — very apparently she felt strongly enough about it that she wanted to bring these concerns to you and I just don't think its — we have alternates. I don't its fair to the defendant to allow her to continue. And obviously her remarks, while not mentioning my name, were directed towards the defense. I mean it doesn't take a rocket scientist to figure that one out. And if I'm wrong — if I'm wrong in the approach I don't know how else you approach a case like this, other than to throw in the towel.
 All these things are factors. If she dosen't want to believe that or dosen't feel comfortable in that setting, I think she ought to go.
 THE COURT: All right. Okay. In light of the fact that she told me that she could carry on her task I don't have a problem with that. We did voir dire her and the questions were asked. And notwithstanding the fact that this may be distasteful to her personally she's going to have to carry on. So I'm not going to grant the defense motion at this point in time. So have you got a witness lined up for me?
The jury returned a guilty verdict on all twenty-two counts: counts one through ten for rape in violation of R.C. 2907.02, counts eleven through twenty for gross sexual imposition in violation of R.C. 2907.05, count twenty-one for rape, and count twenty-two for gross sexual imposition. The judge sentenced Wilson to five year terms of incarceration for counts one through eleven, the sentences to be served consecutively, and to twelve month terms of incarceration on counts twelve through twenty-two, the sentences to be served consecutively but concurrently to the sentences imposed on counts one through eleven.
Wilson submits one assignment of error for review.
 THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR AND IMPARTIAL JURY.
Wilson argues that the jury was not fair and impartial because of the cumulative effect of errors concerning the two jurors mentioned above. He suggests that the voir dire involving Juror M might have caused a belief that the prosecutor assisted or was instrumental in the establishment of that Arabica Coffee shop and benefit to Juror M, and, thus, the appearance of a business connection between the State and Juror M. He claims that Juror L should have been asked whether she could be fair and impartial in light of her feelings about the scope of cross-examination by Wilson's lawyer since "carrying on her assignment" does not necessarily indicate a duty to be fair and impartial. He contends she should have been removed.
"The jury system is characterized by its intrinsic fairness and is the most rational way of determining questions of fact." [Harvard Law Professor James Thayer (1898)]. It is the inherent right of every criminal defendant to have his case tried to a fair and impartial jury. It is the duty of both the court and trial counsel to ensure that a jury will apply the law fairly and impartially. State v. Bridgeman (1977), 51 Ohio App.2d 105,109-110, 366 N.E.2d 1378, 1383. Because the trial court is in the best position to determine the sincerity and truth of a jurors remarks during voir dire, we must pay deference to the trial court's decision as to the fitness for service of a prospective juror. State v. Tyler (1990), 50 Ohio St.3d 24, 30,553 N.E.2d 576, 586. See, also, State v. Williams (1983), 6 Ohio St.3d 281,287-88, 452 N.E.2d 1323, 1331-32 (Court notes importance of facial movements and physical gestures in interpreting juror responses during voir dire.) Absent proof of an abuse of discretion in selecting or removing jurors, an appellate court will presume regularity in the proceedings. State v. Shields
(1984), 15 Ohio App.3d 112, 472 N.E.2d 1110, 1118-19, citingBeach v. Sweeney (1958), 167 Ohio St. 477, 150 N.E.2d 42.
The remarks made by the assistant prosecutor in front of both the judge and defense counsel regarding the Parma planning committee meeting, if they are to be interpreted as Wilson now argues, should have been objected to by defense counsel and been made the subject of further inquiry by the trial court. Since there was no objection to the statement or further inquiry of the juror, without more definite proof of the impropriety of the remark, we must presume regularity and find that the statement was not meant to be, nor was it taken to be, improper.
As to Wilson's claim that the judge should have removed Juror L from the panel, the record indicates that Judge Corrigan examined the juror and determined that she was capable of continuing her duty as a juror on the case. Her assignment, as a juror and supported by her oath, required her to apply the law given by the court fairly and impartially. Denying Wilson's motion to remove Juror L was not error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI. J., CONCUR; ---------------------------- JAMES M. PORTER. A.J., CONCURS ----------------------------- IN JUDGMENT ONLY. ----------------- --------------- JUDGE ANNE L. KILBANE
N.B. This entry is an announcement of the court's decision. See App. R. 22 (B), 22 (D) and 26 (A); Loc. App. R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App. R. 22 (E), unless a motion for reconsideration with supporting brief, per App. R. 26 (A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App. R. 22 (E). See, also, S.Ct.Prac.R. II, Section 2 (A) (1).