OPINION
{¶ 1} Defendant-appellant, Scott A. Carter, appeals from a judgment of the Franklin County Court of Common Pleas based on verdicts rendered by a jury, convicting him of three counts of aggravated robbery, one count of robbery, one count of aggravated burglary and three counts of kidnapping. Each of the counts carried firearm specifications pursuant to R.C. 2941.145. On September 9, 2003, the court granted appellant's request for leave to file a delayed appeal of his convictions, and he presents six assignments of error for our review, as follows:
Assignment of Error I
The trial court commits reversible error by not declaring a mistrial when the jury receives verdict forms that state positively that appellant was in possession of a firearm during the commission of the charged crimes.
Assignment of Error II
Appellant received ineffective assistance of counsel, as trial counsel did not object to or request a mistrial after it was discovered that the language of the verdict forms assumed appellant's guilt regarding the use of a firearm, for not objecting to the state's use of convictions that were over 10 years old and for withdrawing the defense motion to suppress evidence from an illegal search of appellant's residence.
Assignment of Error III
The trial court commits reversible error by denying appellant's request to testify about his possible whereabouts during two of the robberies with which he was charged.
Assignment of Error IV
Appellant's due process rights under the state and federal constitutions were violated by prosecutorial misconduct, when the assistant prosecuting attorney told the jury that every time appellant was released from prison he committed crimes, indicating that he must have committed the crimes in the present case, based on his past behavior.
Assignment of Error V
Appellant's due process rights under the state and federal constitutions were violated when the state failed to preserve a video-taped interview of his statement to the police, when said video-tape constituted "brady" material or exculpatory evidence.
Assignment of Error VI
The trial court commits reversible error when it fails to state it (sic) reasons on the record for giving appellant maximum consecutive sentences as required by ohio revised code §§ 2929.12, 2929.14(C) AND2929.19(B)(2)(c) (d).
 {¶ 2} The facts pertinent to this appeal presented at trial consist of the following. On May 15, 2001, Mr. James W. Linker ("Linker") was working at his business, The Link Stamp Company, located at 3461 East Livingston Avenue in Columbus, Ohio. That same day, appellant entered Linker's business, put a gun to his face, and demanded his wallet and cash from the register. Linker testified that because "there was nothing he could do about the gun," he decided to spend the time "looking at [appellant] to see what he was wearing or memorize his face." (Tr. at 52.) After taking Linker's identification, credit cards, family photographs and approximately $600, appellant left the store. (Id. at 54.) Linker used the telephone to call 911 and gave a description of appellant and the events that had ensued. After the police arrived, Linker described appellant a second time, stating he was "a black man, a gray sweatshirt-type sweater, blue pants, silver necklace, not terribly dark skinned." (Id. at 53.)
 {¶ 3} Although he could not remember a specific date, Linker testified that he was later notified that the police had found his wallet, and he was asked to view a photo array in an attempt to make an identification of the robbery suspect. Detective Franken ("Franken") presented Linker with the photo array at his home for identification. Without suggestion from Franken, Linker immediately selected one photo, which he believed to be of the man who robbed him. Linker identified appellant as the man who robbed him in open court.
 {¶ 4} On May 16, 2001, appellant approached the home of Mr. Edward J. Hetzel ("Hetzel") and his wife, Mrs. Elizabeth Hetzel located at 1429 Harlow Road in Columbus, Ohio, claiming that his truck broke down and asking to use the telephone. (Id. at 68.) Hetzel gave appellant a cordless phone to use and closed his door. Hetzel opened the door a second time and was faced with the barrel of appellant's gun. Appellant took Hetzel and his wife at gunpoint, walking them down the hallway. At that time, Hetzel testified he heard appellant telling his friends to come in the home. Thereafter, appellant demanded Hetzel's wallet, and placed him and his wife in their bathroom. (Id. at 69.) Hetzel testified an "armed guard" was placed outside of the door to make sure they did not leave the bathroom. (Id.) Hetzel used the phone in the bathroom to call 911. Later, Hetzel and his wife discovered that jewelry and Hetzel's wallet were missing. An individual was apprehended near their home, (who was later identified as Mr. Dawit Mamo) but neither Hetzel nor his wife could identify him as one of the robbery suspects. Detective Franken showed Hetzel and his wife a photo array in their living room, and without prompting or suggestion, the Hetzels separately identified the individual who they believed robbed them. Additionally, the Hetzels identified appellant in open court as the individual who robbed them.
 {¶ 5} Mr. Theodore Jones ("Jones") testified that on July 20, 2001, he was working at the W.E. O'Neill Warehouse on Alum Creek Drive in Columbus, Ohio. That same day, appellant entered the warehouse claiming to be with a security system company. Once inside the warehouse, appellant put a gun to Jones' face and demanded his wallet, phones, petty cash box and any cash in the warehouse. (Id. at 146-147.) Jones testified appellant took his wallet, a cordless phone and his manager's cell phone. Thereafter, appellant threatened Jones, hit him on the back of the head and forced him in a broom closet. (Id. at 151-153.) After he broke free, Jones called the police.
 {¶ 6} Jones testified that he later listened to a taped recording of a voice mail message from his wife's cell phone, and identified the voice as coming from the man who "stuck the gun in [his] face." (Id. at 162.) Without suggestion or influence, Jones identified the robbery suspect in a photo array brought to him at the warehouse by Franken. Jones identified appellant in open court as the individual who robbed him.
 {¶ 7} Franken, who was initially in charge of the Hetzel robbery, testified on behalf of the State. He stated that appellant was identified as a suspect in the Jones robbery, and was identified by Jones in a photo array. Based on this information, Franken filed an aggravated robbery warrant for appellant. While in the process of researching how he could locate appellant, Franken learned he was on parole. Franken testified that he called appellant's parole officer, D.J. Norris ("Norris") to inform him that he had filed an aggravated robbery warrant on appellant.
 {¶ 8} Norris testified that he was informed by Franken that appellant was "wanted for several armed robberies and kidnappings." (Tr. at 189.) Upon learning of this issue, Norris arranged to meet with Franken at appellant's residence to try to arrest him and search his residence for anything related to the crime. Norris testified that he based his authority to search the premises on a condition of appellant's parole, which states that appellant agrees to a warrantless search of his residence. (Id. at 188.)
 {¶ 9} On August 1, 2001, Norris, Franken and several other parole officers went to appellant's residence to arrest him. Norris testified appellant's mother and an unidentified female were present. Norris explained to appellant's mother that he and the officers needed to conduct a routine search of the home and for appellant. (Id. at 190.) In a subsequent search for appellant inside the home, parole officer Corey Dykstra and Franken found Linker's insurance card and Hetzel's AAA card on a chair in appellant's room. As a result, Norris issued a warrant that same day. (Id. at 230.) On August 2, 2001, Franken obtained a search warrant of appellant's residence and obtained additional items.
 {¶ 10} Norris testified that while appellant was not present in the home, he called by telephone during the search. Norris told appellant he was at his home doing a "routine search of his home and that he needed to turn himself in to me." (Id. at 190.) Norris had no further contact with appellant until he was arrested on the current charges.
 {¶ 11} After his arrest, Franken testified that appellant made a statement, denying his participation in the three robberies. (Id. at 290, 491.) In his statement, Franken testified that appellant indicated the Hetzel robbery was committed by "Dawit Mamo ("Mamo") and two other guys" and "Broaddus Thornton was responsible for putting his people up to these crimes" and committing the three robberies. (Id. at 487, 491.)
 {¶ 12} At the close of the State's case, the defense moved for an acquittal pursuant to Crim. R. 29, which was denied by the trial court.
 {¶ 13} Appellant testified on his own behalf. He broached the issue of his prior convictions on direct examination, stating he was presently on parole for receiving stolen property, forgery and robbery. (Id. at 302.) Appellant testified regarding a regular parole meeting with Norris, his parole officer, in late May or early June 2001. At that meeting, appellant informed Norris that five individuals, one of whom he believed to be Mamo, had robbed him at gunpoint. He indicated he did not report this incident to the police because of "[his] criminal history," and that "[his] believeability [sic] wouldn't have been there because he was a con." (Id. at 306.)
 {¶ 14} Appellant testified regarding his knowledge of the property related to the robberies. Appellant remembered one of the credit cards in his residence belonged to Linker. (Id. at 342.) Appellant also admitted that he "was likely in possession of" Jones' manager's cell phone, indicating he had purchased it from "a guy in the neighborhood." (Id. at 322, 325.) Appellant explained why he had possession of the property, indicating that his ex-girlfriend, Marian Thornton ("Marian") and her brother, Broaddus Thornton ("Broaddus") brought the property to him:
I must explain first my past history [sic] criminal activity and why I was in prison was forgery and receiving stolen property mostly, and throughout a period of time I had became [sic] involved with counterfeiting or making false I.D.'s and selling them.
Also, I have at various times got caught up into a sort of a credit card scheme, of purchasing things with credit cards, of knowing other people that was [sic] actually affiliated with me without their knowledge.
* * *
I was requested to look into * * * `utiliz[ing] some of my previous contacts' when I was involved in that matter before I was in prison to find out whether or not the credit cards can be used to obtain personal information on the person it was issued to in order to create fraudulent I.D's * * * also to determine whether or not the credit card was valid for purchase use at that time.
(Id. at 344-345.)
 {¶ 15} Additionally, appellant explained what he told Marian and Broaddus when they brought him the stolen property:
I told them I was no longer involved in that, I don't do any crime anymore, I am on parole, I am trying to do the right thing. But Marian insisted that it wouldn't do no harm for me to at least check into it to — to analyze the property to see if it was certainly anything of use to them.
I told them that I would, but my intentions were never to do so because I didn't have any contact anymore and I didn't have any intentions of doing the crime.
(Id. at 345-346.)
 {¶ 16} At the conclusion of trial, the court orally instructed the jury on the charges which appellant was tried, including the accompanying firearm specifications.[1] Prior to its initial submission of the verdict forms to the jury, the court found typographical errors and noted that the firearm specification language was missing. The court indicated that the firearm specifications should be attached as separate verdict forms with 12 signature lines for each specification and verdict form. Defense counsel had no objection to correcting the verdict forms as indicated by the court. Counsel for appellant and the State reviewed the corrected verdict forms and the record does not reflect any objections to their content. (Id. at 554.) Following the jury's deliberations, and prior to announcing the verdicts in open court, the judge noticed the verdict forms submitted to the jury included improper language regarding the firearm specifications. Specifically, the verdict forms stated that appellant was in possession of a firearm during the commission of the charged offenses. The firearm specification language in the verdict forms stated:
[W]e, the Jury upon our oaths and the law and evidence in this case, find that the Defendant had a firearm on or about his person or under his control while committing the offense and that the Defendant displayed the weapon and/or brandished the weapon and/or used the weapon to facilitate the [offense].
After noticing the irregularity in the verdict forms, the court excused the jury and stated to counsel:
I think the only way to appropriately remedy this problem now is to interdelineate on the forms the words did/did not, did have or did not have where appropriate, send them back into the jury room to continue their deliberations, to circle the appropriate answer to the question.
(Id. at 554-555.)
 {¶ 17} Counsel did not object to the court's solution. The judge changed the language regarding the firearm specification in accordance with his proposed remedy and modified the previously signed verdict forms by hand, inserting the words "(did/did not) have" in the appropriate sections of the firearm specifications. (Id. at 555-556.) The court orally detailed the changes made to the firearm specification language in the verdict forms by instructing the jury:
Simply complete this sentence according to whatever your finding is. You either circle did and slash out did not, or cross out did not, or you cross out did and you circle did not. Simply make the sentence read according to whatever your finding is.
And what I'm going to ask you to do so that we're positive that everybody agrees to this is to put your initials next to where your signature is on each form so that we can be certain that each juror has agreed to completing the sentence in the appropriate fashion.
(Id. at 561.)
Thereafter, the court sent the jury back for further deliberations.
 {¶ 18} Following their deliberations, the jury returned verdicts finding appellant guilty of all counts and accompanying firearm specifications. The firearm specification verdict forms reflected 12 sets of initials next to the signatures. The trial court imposed maximum consecutive sentences in prison for appellant's convictions for a total of 87 years of imprisonment.
 {¶ 19} Appellant's first assignment of error and part of his second assignment of error are interrelated and will be addressed together.
 {¶ 20} In his first and second assignments of error, appellant challenges the firearm specification language contained in the verdict forms. Appellant asserts that the content of the original verdict forms first submitted to the jury warrants a mistrial. Appellant concedes that neither the trial court nor counsel noticed the defect in the verdict forms before they were submitted to the jury, or before the jury returned its verdicts on the firearm specifications. Nonetheless, appellant asserts that the verdict forms submitted presupposed guilt, thus compromising the jury deliberation process. Appellant urges the court to reverse this case and remand it for retrial on the issue of whether or not appellant was guilty of using a firearm in the indicted charges.
 {¶ 21} Appellant did not object to the verdict forms at trial. Generally, the failure to object at trial to a verdict form results in a waiver of all but plain error. State v. Williams (1996), 74 Ohio St.3d 569,574, fn. 1, 660 N.E.2d 724. Crim. R. 52(B) provides * * * "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 22} Crim. R. 52(B) places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error. State v. Hill (2001),92 Ohio St.3d 191, 200, 749 N.E.2d 274. Second, the error must be plain. To be plain within the meaning of Crim. R. 52(B), an error must be an obvious defect in the trial proceedings. State v. Barnes (2002),94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; State v. Sanders
(2001), 92 Ohio St.3d 245, 257, 750 N.E.2d 90. Third, the error must have affected appellant's substantial rights. This aspect of the rule means that the trial court's error must have affected the outcome of the trial. See Hill, supra, at 205; State v. Moreland (1990), 50 Ohio St.3d 58,62, 552 N.E.2d 894; State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
 {¶ 23} The State argues no reversible error occurred because after the court noticed the error in the verdict forms, it resubmitted the corrected verdict forms to the jury for their consideration prior to taking the verdict in open court. The State indicates that because appellant did not object to the trial court's remedy for correcting the error in the verdict forms, he waived all except plain error. The State contends appellant cannot demonstrate plain error because the jury was given oral instructions regarding the firearm specifications, and instructed to continue deliberations on that issue. As such, the State asserts appellant suffered no prejudice because of the error in the verdict forms. We agree.
 {¶ 24} Though the firearm specification language contained in the original verdict forms was clearly in error, we find no evidence that the verdict forms affected the outcome of appellant's trial. The error in the verdict forms was corrected, and the modified verdict forms were returned to the jury for their consideration of whether or not appellant was in possession of a firearm. The jurors were instructed to initial next to their signature once they were in agreement whether or not appellant did or did not have a firearm in his possession. In addition to the modified verdict forms, the court gave oral instructions to the jury regarding the firearm specifications. Moreover, Linker, the Hetzels and Jones each positively identified appellant as the perpetrator, and testified that appellant was in possession of a firearm during the commission of the robberies. Based on the foregoing, we find no plain error.
 {¶ 25} Additionally, in appellant's second assignment of error, he argues his counsel was deficient for failing to request a mistrial for the jury's verdict for the firearm specifications on the defective verdict forms.
 {¶ 26} In order to succeed on his claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Initially, appellant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by theSixth Amendment. Id. However, an error by counsel, even if unreasonable under prevailing professional standards, does not warrant setting aside a judgment unless the error affected the outcome of the trial. Id. at 691.
 {¶ 27} Thus, under the second prong of Strickland, appellant must show that counsel's deficient performance prejudiced the defense. Id. This factor requires showing that but for counsel's unprofessional errors, a reasonable probability existed that the result of the trial would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 28} In addressing the two-prong test found in Strickland, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.
 {¶ 29} In support of his argument, appellant contends that because his trial counsel failed to object to the defective verdict forms, there was prejudice, as the jury had no option other than to find him guilty of the firearm specification charges.
 {¶ 30} The State argues contra that appellant cannot demonstrate that the outcome of the trial clearly would have been different had the jury received different verdict forms. The State reasserts its position as stated in appellant's first assignment of error, reemphasizing that the court corrected the verdict forms and gave proper oral instructions on the firearm specifications. We agree. In applying the second prong ofStrickland, based on the resolution of our first assignment of error, we cannot say that a reasonable probability exists that, had the jury received different verdict forms, the result of the trial would have been different. Strickland, at 691.
 {¶ 31} Accordingly, appellant's first assignment of error, and his second assignment of error as it relates to his ineffective assistance of counsel argument for failure to object to the content of the verdict forms, are overruled.
 {¶ 32} Under his second assignment of error, appellant additionally argues his trial counsel was ineffective by failing to object to the State's use of his previous convictions during cross-examination to impeach his credibility, when those convictions were in excess of ten years old. The following exchange was cited by appellant as the subject of his argument under his second assignment of error:[2]
MS. REULBACH: Isn't it true you told Detective Franken that is really what your job was, you didn't do robberies, you were a forger?
DEFENDANT: I told him that's what I was by nature, but I don't do any of that anymore. I told him since I have been out of prison I have not embarked on anything like that as of the time of these charges.
MS. REULBACH: Well sir, every time you have been to prison you have gotten out and committed more forgeries and RSP's, isn't that correct?[3]
DEFENDANT: On one of those times, yes, I did it again. Like I said before, I was sent back for the same thing that was before, yes I did. But I have changed. Nine years changed me a lot.
(Id. at 431-432.)
Appellant contests that his counsel's failure to object to the use of his previous convictions was compounded by the prosecutor's statement of appellant's propensity to commit crime. Appellant asserts the theory that it is human nature to assume that if appellant has committed past crimes, he must be guilty of the instant charges. (Appellant's Brief at 7.)
 {¶ 33} Conversely, the State maintains that counsel's failure to object, particularly when the objection is likely to be overruled, is reasonable trial strategy. Because appellant offered evidence of his prior convictions during his direct examination, the State contends any objection to his testimony regarding his prior convictions would likely be overruled. Relying on Evid. R. 404(A)(1), the State argues appellant offered evidence of his prior convictions during his direct examination and thus "opened the door" for the prosecution to question him regarding his prior convictions.
 {¶ 34} The Supreme Court of Ohio analyzed a similar issue in State v.Gowdy (2000), 88 Ohio St.3d 387, 727 N.E.2d 579. In Gowdy, the defendant argued that his counsel was ineffective for failing to object when the State cross-examined him regarding prior charges for domestic violence, no driver's license, and failure to pay child support. In its analysis, the Supreme Court of Ohio noted that on direct examination, the defendant introduced the fact that he had warrants against him. In his testimony, the defendant mentioned both issues surrounding the failure to pay child support and domestic violence. On cross-examination, the prosecutor questioned the defendant about the basis of the warrants he had referred to on direct examination. Defendant explained that one warrant was for failure to pay child support and the other warrant was for a probation violation related to his prior domestic violence conviction against his ex-wife. Id. at 397.
 {¶ 35} The Supreme Court of Ohio held the failure to object to these issues did not rise to the level of ineffective assistance of counsel. Id. In reaching its decision, the Gowdy court found the defense "opened the door to cross-examination on these subjects by bringing them up on direct examination as part of the theory of their defense * * *." Id. The Supreme Court of Ohio concluded this evidence was related to the crux of the defense's case. Id.
 {¶ 36} The Supreme Court of Ohio further stated that while counsel should have objected to the admission of evidence regarding the driver's license offense, the defendant had not demonstrated "`a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'" Id. quoting State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus.
 {¶ 37} Here, appellant testified regarding his criminal history throughout his direct examination, stating he was "mostly" in prison for forgery and receiving stolen property. (Tr. at 345.) Additionally, appellant testified in his direct examination that he was presently on parole for forgery, robbery and receiving stolen property. (Id. at 302.) Appellant's testimony regarding these convictions correlated with his defense tactic of explaining that Marian and Broaddus brought him some of the property from the robberies so he could "utilize some of [his] previous contacts" to determine whether or not the property could be used in furtherance of identity theft. (Id. at 345.) Because appellant introduced this evidence during his direct examination, the prosecution permissibly used these convictions during cross-examination. In accordance with Gowdy, we find the decision of appellant's trial counsel not to object to this line of questioning was not deficient, as it was a reasonable tactical decision.
 {¶ 38} With the exception of his conviction for fleeing, the State's cross-examination of appellant focused on the prior convictions he raised during his direct examination. In applying the second prong ofStrickland, we find that, had appellant's counsel objected to the use of this prior conviction, a reasonable probability did not exist that the result of the trial would have been different. Strickland, at 691. Appellant testified repeatedly regarding his criminal history throughout the course of his direct examination. Furthermore, Linker, Jones and the Hetzels testified in detail regarding the robberies and positively identified appellant as the perpetrator in open court. Thus, we find no prejudice, as appellant's counsel's failure to object to the State's use of appellant's fleeing conviction would not have resulted in a different verdict.
 {¶ 39} Finally, appellant argues that trial counsel was ineffective for dismissing his motion to suppress the evidence found in appellant's home during the search conducted by appellant's parole officer on July 31, 2001. Appellant contends that if his trial counsel had properly argued for the suppression of the evidence found in the first search, the evidence obtained from the second search would be suppressed. Appellant asserts the testimony of Franken illustrates that the evidence found in the initial search led the police to suspect appellant in the Linker robbery.
 {¶ 40} The State argues the withdrawal of the motion to suppress was a tactical strategy. The State relies upon portions of appellant's testimony, arguing that he used his prior convictions of receiving stolen property and forgery to show why he was in possession of the victim's property.
 {¶ 41} We agree. We explored a similar issue in State v. Burke (Dec. 28, 1993), Franklin App. No. 90AP-1344, 1993 Ohio App. LEXIS 6268, judgment affirmed, (1995), 73 Ohio St.3d 399, 1995 Ohio 290, 653 N.E.2d 242, writ of certiorari denied, (1996), 517 U.S. 1112,116 S.Ct. 1336, 134 L.Ed.2d 486. In Burke, the defendant argued his trial counsel was ineffective in withdrawing a motion to suppress statements that defendant made to detectives after he was arrested. The defendant asserted the statements would have been suppressed under Miranda
because, while the detective informed defendant of his right to remain silent and his right to an attorney, he was not informed that anything he said could be used against him at trial. Burke,1993 Ohio App. LEXIS 6268 at *76.
 {¶ 42} We concluded in Burke that the defendant's counsel was not ineffective, as the decision to forego suppression of the statements corroborated his trial strategy. The record indicated the defendant's trial counsel felt the statements at issue were consistent with the defendant's trial testimony. Further, we noted the defendant's counsel believed the jury would look favorably upon the defendant's denial to police detectives of participation in the victim's death. Id.
 {¶ 43} While addressing pre-trial motions in the present case, appellant withdrew his motions to suppress statements, evidence and identification, stating the decision was made for tactical reasons. (Tr. at 35.) Instead of arguing that the evidence should be suppressed, appellant testified and explained how the property came into his possession. Appellant testified Marian and Broaddus gave him the property because of his prior involvement with identity theft. Further, appellant testified one of the credit cards in his residence belonged to Linker. (Id. at 342.) Appellant also admitted that he had possession of Jones' manager's cell phone. (Id. at 322, 325.) Appellant chose to explain his criminal history and why he had possession of the victim's property in support of his defense. Because the record reflects the decision to withdraw the motion to suppress evidence was trial strategy, in accordance with Burke, we find appellant's trial counsel was not ineffective.
 {¶ 44} Based on the foregoing, appellant's remaining arguments under his second assignment of error are overruled.
 {¶ 45} In his third assignment of error, appellant alleges error in the trial court's decision to preclude him from testifying about his possible whereabouts during the Linker and Hetzel robberies. During his direct examination, appellant's counsel asked him to explain his whereabouts on the day of one of the robberies. The State objected, and the following discussion was held outside of the presence of the jury:
MR. ANDERSON: We have no verifiable alibi. It's one of these things he will be explaining where he was.
THE COURT: If he's going to testify to where he was, then that's an alibi. Assuming he is saying he was someplace else other than this place, than that needs to be filed ahead of time.
* * *
If what you're telling me is he doesn't have any specific recollection of where he was at the time and he is simply saying he was not there and he can make guesses about where he might have been, but we're not going on here about guesses. If he knows where he was and it was elsewhere, then that has to be filed seven days prior to trial. So the objection is sustained.
(Tr. at 356-357.)
 {¶ 46} Thereafter, appellant's trial counsel queried appellant:
MR. ANDERSON: I asked you, Scott, where you were, and I sense an either/or situation?
APPELLANT: Yes
MR. ANDERSON: In other words, you don't know; is that right?
APPELLANT: For certain I know I was either/or.
(Id. at 357.)
 {¶ 47} Appellant asserts that he was trying to establish that he was at either of possibly three locations on the evenings of these robberies. Arguing Crim. R. 12.1 is inapplicable, appellant contests he was not trying to establish an alibi. Instead, appellant attests that he was trying to establish that he could not remember which of three locations he could possibly have been. Appellant urges that the State could not have been prejudiced by the admission of this testimony, and that it could have dealt with appellant's whereabouts on cross-examination by confirming his lack of memory on that issue. In summary, appellant contends that his due process rights were violated because he was precluded from developing a defense regarding his whereabouts on the night in question.
 {¶ 48} Relying on Crim. R. 12.1, the State contends the trial court properly excluded appellant's alibi testimony for his failure to comply with the rule. Because the case was almost one year old at the time of the trial, the State argues appellant had ample opportunity to file a notice of alibi. The State asserts that admission of this testimony would have prejudiced its case, as it would not have had the time to investigate appellant's alibi.
 {¶ 49} In State v. Payne (1957), 104 Ohio App. 410, 414,77 Ohio Law Abs. 558, 149 N.E.2d 583, we stated the defense of alibi means that the defendant claims he was at some place other than the scene of the crime at the time the crime was taking place, and hence could not have been involved in the offense. Black's Law Dictionary defines an alibi as "a defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the `relevant time.'" Black's Law Dictionary (7 Ed. Rev. 1999) 72.
 {¶ 50} Under these definitions, we find appellant was attempting to introduce true alibi evidence by establishing that he was "certain" he was at some place other than the scene of the crime at the time the crime was taking place. (Tr. at 357.) Because appellant did not file a notice of alibi pursuant to Crim. R. 12.1, the trial court did not err by prohibiting this testimony. Accordingly, appellant's third assignment of error is overruled.
 {¶ 51} In his fourth assignment of error, appellant alleges his due process rights were violated by the State's questioning during cross-examination. Under this assignment of error, appellant first references the State's question "Did they try to rehabilitate you in prison?" (Tr. at 368.) Appellant indicates the court sustained defense counsel's objection to this question, yet did not give a curative instruction to the jury. Thereafter, appellant challenges the same exchange as stated in his ineffective assistance of counsel argument under his second assignment of error. Specifically, appellant asserts that the State's question, "Well sir, every time you have been to prison you have gotten out and committed more forgeries and RSP's, isn't that correct?" is improper.[4] (Id. at 431.) Appellant asserts the State's questioning regarding appellant's previous convictions violates Evid. R. 404(B), as prior convictions cannot be used to demonstrate that in the current case, appellant acted in conformity with his past behavior.
 {¶ 52} The State contends its questioning did not violate appellant's due process rights. Because appellant raised issues of his good character on direct examination, the State argues it was allowed to impeach the defendant with prior convictions. Alternatively, the State contends that even if the statement were deemed improper, under a plain error analysis, appellant fails to prove that had the statement not been made, the outcome of the trial clearly would have been different.
 {¶ 53} In order to support his claim of prosecutorial misconduct, appellant must show the prosecution acted improperly, and that this conduct prejudicially affected the substantial rights of appellant. Statev. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, certiorari denied, (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. Issues of prosecutorial misconduct must be addressed in the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203, certiorari denied, (1998), 525 U.S. 860, 119 S.Ct. 146, 142 L.Ed.2d 119. A prosecutor's conduct cannot be grounds for error unless his conduct deprived the defendant of a fair trial. State v. Evans (1992),63 Ohio St.3d 231, 240, 586 N.E.2d 1042, certiorari denied, (1992),506 U.S. 886, 113 S.Ct. 246, 121 L.Ed.2d 179.
 {¶ 54} Here, the trial court properly instructed the jury what consideration they may give to this evidence:[5]
Now, evidence was admitted of another act which the Defendant may have committed. You may not consider that evidence to determine whether the Defendant committed any act alleged in the indictment.
If you find from other evidence that the Defendant committed the acts charged in the indictment, then you may consider the evidence of the other act as bearing upon the Defendant's motive, intent, opportunity, preparation, plan, knowledge, absence of mistake or accident, or other relevant purpose.
(Tr. at 522.)
Additionally, the trial court properly instructed the jury:
Testimony was introduced tending to show that the Defendant had been convicted of crimes. You may consider this testimony to judge the Defendant's credibility and the weight to be given to his testimony. You may not use it for any other purpose.
(Id. at 523.)
 {¶ 55} With regard to the evidence presented at trial, we note that appellant testified to his criminal history during his direct examination. Moreover, Linker, the Hetzels and Jones testified regarding the robberies, and each witness positively identified appellant as the perpetrator. Appellant admitted he was "likely in possession of" Jones' manager's cell phone. (Id. at 322, 325.) Further, stolen property related to the Linker and Hetzel robberies were recovered from appellant's bedroom at his residence. We find that even if the State acted improperly, its conduct did not prejudicially affect appellant's substantial rights. Based on the evidence presented, and the court's instructions to the jury regarding their consideration of appellant's "other acts," the State's line of questioning during cross-examination did not deprive appellant of his right to a fair trial. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 56} In his fifth assignment of error, appellant contends his due process rights were violated when the State failed to preserve a videotaped statement of his interview with the police. Before trial, the State informed the court that appellant's videotaped statement and a tape recording of a voice message alleged to have been left by appellant on Jones wife's phone were missing. The prosecution represented that it had not intended to use the videotaped statement in its case in chief, and upon defense counsel's request, had left an envelope containing both the videotaped statement and the tape recording at the front desk for defense counsel to pick up. The State indicated defense counsel did not communicate any further requests for appellant's statement after the envelope was left at the front desk.
 {¶ 57} In the videotaped statement, appellant maintains he denied his involvement in any of the crimes he was charged with, and explained what he knew about the crimes. Appellant asserts this statement would have strengthened the veracity of his defense, and that a reasonable probability exists that the outcome of the case would have been different had the tape been preserved. Appellant argues the State did not take necessary precautions to prevent destruction of the videotape. In support of his position, appellant cites Arizona v. Youngblood (1988), 488 U.S. 51,58, 109 S.Ct. 333, 102 L.Ed.2d 281, for the proposition that the Supreme Court of the United States found that a defendant's due process rights as interpreted in Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215, are violated when the prosecution suppresses or fails to preserve material, exculpatory evidence.
 {¶ 58} Conversely, the State argues that appellant's due process argument was waived, as he did not object to the loss of the videotape. The State further contends that appellant has failed to establish aBrady violation. The State asserts that appellant has not alleged the State acted in bad faith regarding the loss of appellant's videotaped statement, as required by Youngblood. Finally, the State contends appellant could not present this videotaped statement at trial, as there is no hearsay exception that would permit him to introduce his own self-serving statement. Even had the videotape been admissible, the State asserts the result of the trial would not have been different because of the eyewitness identification by each of the four victims.
 {¶ 59} In support of its position, the State cites State v. Davis
(Aug. 15, 1996), Franklin App. No. 96AP-240, 1996 Ohio App. LEXIS 3452, in which we rejected that the defendant's counsel was ineffective for failing to seek the admission of defendant's prior exculpatory statement to the police. In reaching this decision, we noted that the defendant failed to articulate the grounds for the admission of this evidence. Specifically, we noted that, "the party opponent [the state] did not attempt to introduce the statements at trial, and under the Evidence Rules, defense counsel would have been precluded from introducing this statement." Davis, 1996 Ohio App. LEXIS at *14.
 {¶ 60} "Suppression by the prosecution of evidence that is favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." Brady at 87; State v. LaMar,95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, at ¶ 27, certiorari denied, 537 U.S. 1057, 123 S.Ct. 632, 154 L.Ed.2d 537. "In other words, when the State fails to disclose material exculpatory evidence requested by a defendant, the State violates that defendant's due process rights regardless of whether the State's inaction stems from good or bad faith."State v. Woodson, Franklin App. No. 03AP-736, 2004-Ohio-5713 at ¶ 25. Exculpatory evidence "is `material' within the meaning of Brady only if there exists a `reasonable probability' that the result of the trial would have been different had the evidence been disclosed to the defense." State v. Johnston (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, rehearing denied, 40 Ohio St.3d 707, 534 N.E.2d 850, later proceeding,64 Ohio App.3d 238, 580 N.E.2d 1162, paragraph five of the syllabus.
 {¶ 61} When potentially exculpatory evidence requested by a defendant is permanently lost, "courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." California v. Trombetta (1984), 467 U.S. 479, 486,104 S.Ct. 2528, 81 L.Ed.2d 413. If the defendant cannot demonstrate that the lost evidence is materially exculpatory, then, to establish a due process violation, the defendant must demonstrate the State lost or destroyed the evidence in bad faith. Woodson at ¶ 26; Youngblood at 58. See, also, State v. Beliveau (Oct. 25, 2001), Franklin App. No. 01AP-211, 2001 Ohio 4112; State v. Brust (Mar. 28, 2000), Franklin App. No. 99AP-509, 2000 Ohio App. LEXIS 1250; State v. Jones (June 11, 1998), Franklin App. No. 97APA08-1105, 1998 Ohio App. LEXIS 2550.
 {¶ 62} Therefore, if evidence is not materially exculpatory, but only "potentially useful," the state's failure to preserve it does not violate due process unless a defendant can show the State acted in bad faith.Youngblood, supra at 58. Courts require proof of bad faith in the absence of proof that the evidence was materially exculpatory because the bad faith requirement "limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." Id.
 {¶ 63} Here, appellant alleges that the statements made by appellant in the interview with the police would have supported the exculpatory nature of appellant's testimony at trial. Otherwise, appellant does not set forth any additional theory of how the contents of the interview could be considered material exculpatory evidence. At trial, Franken testified that appellant denied his participation in any of the robberies in his statement to the police. However, Linker, the Hetzels and Jones testified regarding the details of the robberies, and each witness positively identified appellant as the robbery suspect. Based on the record, we find that the information purportedly on the taped statement is no different than the testimony given by appellant. Had the statement constituted admissible evidence, a reasonable probability does not exist that the result of the trial would have been different. As such, we find appellant's videotaped statement was not material exculpatory evidence.
 {¶ 64} As a result, appellant is required to show bad faith on the part of appellant through the loss of the tape. At most, appellant's contention that the State failed to take necessary precautions to preserve the videotaped statement can be construed as an allegation that the State acted in bad faith. Nonetheless, we find the record does not demonstrate that appellant satisfied his burden of proving the State acted in bad faith through the loss of appellant's statement. Moreover, even if appellant satisfied this burden, he is precluded from entering his statement into evidence under Evid. R. 801(D)(2). Davis,1996 Ohio App. LEXIS at *14. Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 65} In his sixth assignment of error, appellant contends that the trial court failed to give its reasons for imposing maximum, consecutive sentences. Appellant asserts that the trial court failed to state why these offenses in this case constituted the worst form of the offense, why appellant was most likely to re-offend after release, and failed to reasonably explain why the prison term imposed was not disproportionate to the crimes committed.
 {¶ 66} The State argues contra that the trial court properly sentenced appellant to maximum, consecutive sentences. The State cites to various portions of the sentencing hearing, asserting that the court noted the criminal history of appellant, and found after articulating the facts of the cases, that appellant committed the worst form of the offenses. Finally, the State asserts that the court found appellant posed the greatest likelihood of committing future crimes. By making these findings, the State asserts that the trial court met its statutory obligation for imposing maximum consecutive sentences.
 {¶ 67} R.C. 2929.14(C) provides in part, with regard to the imposition of the maximum sentences:
Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
 {¶ 68} R.C. 2929.14(E)(4) provides:
If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 69} R.C. 2929.19(B)(2)(c) requires the court to make a finding that gives its reasons for imposing consecutive sentences under section 2929.14
of the Revised Code. Additionally, R.C. 2929.19(B)(2)(d) requires a trial court to set forth its reasons for imposing the maximum prison term. In order to lawfully impose the maximum term for a single offense, the trial court need only find the offender falls into one of the listed criteria in R.C. 2929.14(C). State v. Clark, Franklin App. No. 02AP-1312, 2003-Ohio-4136, discretionary appeal not allowed, 100 Ohio St.3d 1509,2003-Ohio-6161, 799 N.E.2d 187 at ¶ 14. "While the trial court is not required to `utter any magic or talismanic words * * * it must be clear from the record that the court made the required findings.'" Clark,
at ¶ 15, quoting State v. White (1999), 135 Ohio App.3d 481, 486,734 N.E.2d 848. Further, when the trial court decides to impose consecutive sentences, the trial court must make warranted findings under R.C. 2929.14(E)(4) and state its reasons on the record for imposing consecutive sentences. State v. Comer, 99 Ohio St.3d 463, 468,2003-Ohio-4165, 793 N.E.2d 473. "A trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences. These findings and reasons must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision." Id. at ¶ 21.
 {¶ 70} During the sentencing hearing, and prior to imposing sentence, the court elaborated on the facts in both the Hetzels and Jones' robberies, stating there was "an increased risk of danger that was involved" in those incidents:
The Hetzels were forced in their bathroom and there was a separate invader at the door with a gun. This man lost all control over what that man did at that point in time. That man could have shot these people or harmed them in some other fashion, so that kidnapping clearly does not merge.
Mr. Jones was struck over the head and then forced into a small abandoned washroom inside of an abandoned warehouse and then a chair was propped up against the door. He left him without any understanding of how seriously he had been harmed when he was hit in the head, and for all intents and purposes left this man in an abandoned warehouse where who knows what would have happened to him. So that kidnapping does not merge either.
(Tr. at 588-589.)
The court did not discuss or elaborate on the facts of the Linker robbery.
 {¶ 71} In imposing sentence, the court referenced a psychiatric report from the institution, and a post-sentence investigation that was performed after appellant's admission to the institution in 1991 and stated:
The Court under 2929.14 is going to indicate here that consecutive service is necessary to protect the public from future crime and to punish this offender for the behavior, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public.
[T]hese offenses were committed while this man was out on parole after having been released I think for the fourth time from the prison institution, and he was on parole at the time these offenses occurred.
The court finds that the harm caused by these multiple offenses was so great or unusual that no single prison term for any of the offenses committed as a part of this course of conduct adequately reflects the seriousness of the offender's conduct.
And then finally, the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by this offender.
These are maximum sentences, and there are findings that are necessary because of that.
Court finds here that the longest prison term authorized for these offenses is appropriate here. The Court finds that these are the worst forms of the offenses and that this Defendant poses the greatest likelihood of committing future crimes.
(Id. at 591-592.)
 {¶ 72} Here, we find the court stated sufficient reasons for imposing a maximum sentence. Our opinion in State v. Taylor, Franklin App. No. 03AP-1233, 2004-Ohio-6066 is similar to the instant case. In Taylor, the defendant argued that the trial court's imposition of the maximum sentence was in violation of R.C. 2929.14(C). We reviewed the transcript of the sentencing hearing, noting that the trial court indicated the defendant's criminal background, numerous prison terms and multiple probation violations. In affirming, we found "[t]hese facts support the trial court's findings that appellant posed the greatest likelihood of committing future crimes. In doing so, the trial court adequately stated its reasons for imposing a maximum sentence." Id. at ¶ 7-8.
 {¶ 73} In the present case, the court noted appellant's criminal history and numerous prison terms. Additionally, the court indicated that appellant committed these offenses while he was on parole. Based on the facts gleaned from the record, we find the trial court sufficiently found that appellant posed the greatest likelihood of committing future crimes and stated its reasons for its finding. In doing so, the trial court properly imposed a maximum sentence. We need not reach whether the trial court aptly stated its reasons why these offenses in this case constituted the worst form of the offense, as the court need only find the offender falls into one of the listed criteria in R.C. 2929.14(C).Clark, supra. Accordingly, we overrule appellant's sixth assignment of error with regard to the court's imposition of maximum sentences.
 {¶ 74} In addressing the imposition of consecutive sentences, pursuant to R.C. 2929.14(E)(4), the trial court found that consecutive sentences were necessary to protect the public from future crime or to punish the defendant, that the consecutive sentences were not disproportionate to the seriousness of defendant's conduct and to the danger he posed to the public, and that the harm defendant caused was so great or unusual that a single prison term would not adequately reflect the seriousness of his conduct.
 {¶ 75} In support of its findings, the court reasoned there was increased risk of danger involved with the Hetzel and Jones offenses. Specifically, the court noted that when the Hetzels were locked in the bathroom there was a separate individual at the door with a gun. The court indicated that appellant "lost all control over what that man did at that point in time," concluding that the Hetzels could have been "shot or harmed in some other fashion." (Tr. at 589.) With regard to the Jones robbery, the court found that appellant left Jones in an abandoned warehouse without any comprehension of the extent of his injuries. Finally, the court indicated the robberies were committed while appellant was on parole after he was released for the fourth time from the prison institution. While the court's reasons for imposing consecutive sentences were not precisely aligned with its findings,[6] we find its analysis was sufficient with respect to the Hetzels and Jones robberies.
 {¶ 76} However, the record does not reflect the trial court enumerated any reasons in support of its findings with regard to the Linker robbery as required by R.C. 2929.19(B)(2)(c). The court merely reiterated the statutory language in R.C. 2929.14(E)(4) without giving reasons in support of its decision to impose a consecutive prison sentence for the Linker offense. Comer at ¶ 20. Accordingly, appellant's sixth assignment of error is sustained with regard to the trial court's imposition of consecutive sentences.
 {¶ 77} For the foregoing reasons, appellant's first, second, third, fourth and fifth assignments of error are overruled. Appellant's sixth assignment of error is sustained in part and overruled in part, and this matter is remanded for re-sentencing in accordance with R.C. 2929.14(E)(4).
Judgment affirmed in part; reversed in part; cause remanded withinstructions.
Brown, P.J., concurs.
Bryant, J., concurs separately.
[1] The record does not reflect that appellant objected to the court's oral instructions to the jury, and the instructions are not the subject of this appeal.
[2] Appellant does not refer to specific convictions in his second assignment of error. However, we note that during cross examination of appellant, the State questioned him regarding his convictions for forgery, robbery, receiving stolen property and fleeing.
[3] Whether or not this exchange constitutes prosecutorial misconduct will be addressed in our analysis of appellant's fourth assignment of error.
[4] Appellant's argument under this assignment of error appears to focus on this statement.
[5] Unless proven otherwise, the jury is presumed to follow instructions given to it by the court. State v. Mason (1998),82 Ohio St.3d 144, 157, 694 N.E.2d 932.
[6] See State v. Altalla, Franklin App. No. 03AP-1127, 2004-Ohio-4226, appeal denied, 2004-Ohio-6585, 819 N.E.2d 710, at ¶ 10.